299 P.2d 652

Neal Conley MORRIS, Petitioner,

v.

INDUSTRIAL COMMISSION of Arizona,

and

Joy B. Patterson, John A. Chiono, Jay M. Patterson and Charles A. Patterson, d/b/a Patterson Motor Company, Respondents.

No. 6205.

Supreme Court of Arizona.

July 10, 1956.

Rehearing Denied Sept. 25, 1956.

Jennings, Strouss, Salmon & Trask, by Wallace O. Tanner, Phoenix, for petitioner.

John F. Mills, Phoenix, for respondent Industrial Commission. John R. Franks, Donald J. Morgan, and Robert K. Park, Phoenix, of counsel.

UDALL, Justice.

Petition for review of an award of The Industrial Commission of Arizona, which agency is hereinafter referred to as the commission. The petitioner, Neal Conley Morris, 40 years of age, while in the employ of the above named individuals, d. b. a. Patterson Motor Company, admittedly suffered an injury by accident arising out of and in the course of his employment. The employer was insured with the State Fund, and upon receipt of the necessary reports the commission entered an order finding the claim to be compensable. Subsequent to allowance for accident benefits and temporary total disability, the commission, when petitioner's condition became stationary, found that he was entitled to further compensation for partial permanent disability as a *scheduled* injury, computed on an average monthly wage base of $116.80, with certain deductions made on account of compensation theretofore paid him in a previous industrial accident.

These additional undisputed facts need to be stated in order that the problems presented may be fully understood, viz.: petitioner Morris was previously injured in an industrial accident on June 8, 1950, while employed by another party as a truck driver. He sustained multiple fractures of his right hand for which he received accident benefits plus total temporary and partial temporary compensation amounting in the aggregate to $8,656.64. In addition he was paid permanent partial disability compensation computed upon the basis of a scheduled injury under Section 56–957 (b), pars. 12, 21, A.C.A. 1939 as amended by Chapter 55, Laws 1953 (now Section 23–1044, subd. B, pars. 12, 21, A.R.S.). This will hereinafter be referred to as subsection (b).

The accident in the instant case occurred on August 20, 1954, three days after he went to work for the Pattersons as a cowboy and truck driver. It appears that in attempting to rope a cow his horse fell and rolled over on him, causing a fracture of the right wrist and the left scapulae. By the time his condition became stationary for rating purposes the injury to the left shoulder had completely healed, leaving no permanent disability. However, the wrist injury proved to be permanent in its nature, and the medical advisory board's opinion was that:

"As a result of the injuries sustained in the two accidents, including the present one on August 20, 1954, he has a partial permanent disability equivalent to a 75% functional loss of the right arm."

The commission accepted this uncontradicted medical evidence, and after determining petitioner's average monthly wage, it made findings and an award. The pertinent portions of said findings are:

"7. That said applicant suffered a previous industrial accident on June

8, 1950, resulting in 80% loss of function of the right (major) hand, for which he has been compensated in the sum of $5,784.26, or for a period of 40 months.

"8. That said applicant is now suffering a 75% loss of function of the right (major) arm, which would entitle him to the sum of $58.40 monthly for a period of 45 months, *of which the above 40 months is deductible;* therefore, leaving the sum of $58.40 monthly for a period of 5 months due said applicant." (Emphasis supplied.)

Petitions for rehearing were filed and granted and a formal hearing was held at which evidence was given by petitioner. Nevertheless the commission on November 4, 1955 rendered its decision upon rehearing affirming previous findings and award, and this petition for certiorari followed. From the above it will be observed that the award was made as a scheduled injury under subsection (b), supra, which reads in part:

"(b) Disability shall be deemed permanent partial disability if caused by any of the following specified injuries, and compensation of fifty-five (55) per cent of the average monthly wage of the injured employee, in addition to the compensation for temporary total disability, shall be paid for the period given in the following schedule:

\* \* \* \* \* \*

"13. For the loss of a major arm, sixty (60) months, or of a minor arm, fifty (50) months;

\* \* \* \* \* \*

"21. For the partial loss of use of \* \* \* arm, \* \* \* fifty (50) per cent of the average monthly wage, \* \* \*."

In computing the precise amount to be paid thereunder, the commission—in view of the previous injury—attempted to follow the provisions of Section 56–957(e), A.C.A. 1939 as amended by Chapter 55, Laws 1953, (now Section 23–1044(E), A.R.S.), to wit:

"(e) In case there is a previous disability, as the loss of one eye, one hand, one foot, or otherwise, the percentage of disability for a subsequent injury shall be determined by computing the percentage of the entire disability and deducting therefrom the percentage of the previous disability as it existed at the time of the subsequent injury." (Hereinafter referred to as subsection (e).)

By appropriate assignments of error the petitioner is challenging the correctness of the award. Three questions are raised: (1) did respondent commission properly award compensation on the basis of a

scheduled disability?; (2) was it proper to deduct the previous disability petitioner sustained in 1950, for which he had been compensated?; and (3) did the commission arrive at a fair "average monthly wage" as a basis for the payment of compensation? We shall consider these issues in the order stated.

Scheduled or Unscheduled Disability

Petitioner contends that the commission cannot properly award compensation for a *scheduled* permanent disability to the right arm under subsection (b), supra, because of the previous scheduled disability that petitioner had suffered to the right hand. He maintains that the present injury must be considered as an "unscheduled" or "odd lot" disability and compensated under the provisions of subsection (c) of Section 56–957, supra. He relies primarily upon the case of McKinney v. Industrial Commission, 78 Ariz. 264, 278 P.2d 887. That case, though slightly different on the facts (successive injury causing 35% functional loss of use of left leg with a prior complete loss of right leg in a nonindustrial accident), turns upon a similar principle. However, to fully understand the McKinney case, we must look further into previous decisions of this court upon which that case was bottomed. As pointed out therein, this court in the case of Ossic v. Verde Central Mines, 46 Ariz. 176, 49 P.2d 396, 402, laid down dictum to the effect that "in the event of multiple injuries occurring at separate times (note: actually *successive* injuries), the matter was not to be treated as a scheduled injury but must be tested by *the complete effect of both injuries*." (Emphasis supplied.) The Ossic case itself involved multiple injuries—that is, more than one disability flowing from the same industrial accident—as distinguished from a succesive injury arising from a subsequent accident. In establishing the proposition that the legislature intended "the commission must consider the total picture of all the injuries in computing the extent of the disability," the court, speaking through Chief Justice Lockwood, said:

"By the terms of this provision, if two scheduled injuries are received at different times, the commission' is directed to determine the entire disability as it exists after the second injury, and in apportioning the compensation for which the last employer is responsible, to deduct the percentage of the first disability from the total disability as it existed after the subsequent injuries. *If the complete effect is the test when the injuries are received separately,* we see no reason why it should not be the same when they are received simultaneously." (Emphasis supplied.)

The rule of the Ossic case as to multiple injuries falling into the "odd lot" classification was affirmed in Williams. v. Indus-

trial Commission, 73 Ariz. 57, 237 P.2d 471, which was another multiple injury case (simultaneous injuries to right foot and left arm), and again in Engle v. Industrial Commission, 77 Ariz. 202, 269 P.2d 604 (involving simultaneous injuries to both hands). However, although the dictum of the Ossic case as to *successive* injuries was made the basis for this court's repeated holding as to *multiple* injuries, the problem specifically raised by the former situation was never directly met until the McKinney case. In that case the commission purported to make a scheduled award under subsection (b), entirely disregarding the mandate of subsection (e). The court said [78 Ariz. 264, 278 P.2d 888]:

> "We are unable to perceive how subdivision (e) can be ignored. It makes express provision for apportioning the percentage of disability chargeable to the employer for a subsequent disabling injury. By its terms special provision is made for this special situation. *Under such conditions, subdivision (b) has no application. * * *"* (Emphasis supplied.)

In the instant case the commission has obviously made a futile attempt to comply with subsection (e). They have, it is true, sought to apportion the loss attributable to the subsequent injury, but by a process of subtracting the scheduled period of 40 months, during which he was first compensated, from the scheduled 45-month period now allowed for the overall injury to the arm. We find no legal justification in the statute—or in our reported decisions interpreting same—for such action as was taken in the instant case. The whole legislative history of this workmen's compensation law belies such an interpretation. Chapter 28, § 11, Laws 1939, which amended Section 1438e, R.C.1928, segregated the scheduled and unscheduled subsections and thereafter in another subsection, (d), listed the considerations for determining percentage of disability and the method for computing disability in a subsequent injury situation. Chapter 55, § 1, Laws 1953, then subdivided the latter section into two parts —i. e. subsections (d) and (e). In the new subsection (d) the phrase *"amount which represents the reduced monthly earning capacity for the purposes of subsection (c),"* is substituted for "percentage of disability". It is notable that this latter phraseology is still used in subsection (e). Obviously both (d) and (e) relate only to subsection (c). It follows that in instances of subsequent injury the commission must determine the entire loss of earning capacity and deduct therefrom the "disability as it existed at the time of the subsequent injury." It seems to us the commission has overlooked the plain language of the statute. The directive of subsection (e) is that "the percentage of disability for a subsequent injury" be determined, and thereafter a specific method of computation

is set out, to wit: "by computing the percentage of the entire disability and deducting therefrom the percentage of the previous disability as it existed at the time of the subsequent injury." This percentage cannot be dogmatically equated with the actual amount fixed in the prior award as expressed in terms of a scheduled injury. The language of the statute—both subsections (d) and (e)—plainly infers that the previous disability must be re-evaluated as of the time of the subsequent award. This too is borne out by the McKinney case, supra.

■ The legislature has in explicit language directed that the commission shall *not* compute disability awards in successive injury situations on the basis of Section 56–957(b), supra, which is the *scheduled* injuries section. On this point the McKinney decision is controlling. In the instant case, by reason of this being a subsequent disability, such is no longer within the scheduled injury category. We hold there is no logical way in which the language of subsection (e) can be said to refer to scheduled injuries, hence the method of computation used was improper and the award made by the commission must be set aside.

### Average Monthly Wage

While the above holding necessitates setting aside the award, inasmuch as the average monthly wage question will again arise we shall in compliance with a request of counsel determine the governing principles to be applied herein.

■ The measure of compensation for injuries received in industrial accidents, under our law, is computed "on the basis of average monthly wage at the time of injury." Section 56–952, A.C.A. 1939, now A.R.S. § 23–1041. 'In the instant case petitioner is complaining that an erroneous wage base was used. He urges that the commission should have measured the difference between what he can earn now and the high wage he was earning at the time of the initial accident in June of 1950, citing in support thereof Matlock v. Industrial Comm., 70 Ariz. 25, 215 P.2d 612. Obviously the wage base used in compensating him for the original injury has no relevancy here, nor does the Matlock case sustain such a contention.

■ Petitioner next urges that his wage base should be measured by the wage Pattersons had agreed to pay him ($7.50 per day, on a six-day week, amounting to $195 to $210 per month) even though he had worked only three days before being injured. He maintains that where an injured workman is employed under a fixed contractual wage such is "the best evidence" of average monthly wage, and the commission is bound to accept same. We find nothing in the statute limiting the commission's consideration in the matter to the wage set by the instant contract. It should

74

be kept in mind the burden was upon the petitioner to establish what the "average monthly wage" was, and he having unwarrantedly relied upon three days of employment as constituting such wage base, we hold the commission did not err in refusing to apply this yardstick.

The legislature has set out a specific manner for establishing an "average monthly wage", which statute has several times been considered by this court, the latest decision and leading case on the subject being Steward v. Industrial Comm., 69 Ariz. 159, 211 P.2d 217. Here, the commission on the meager record before it, attempted to follow the pronouncements laid down in that case. Expressly the statute provides for a method of wage determination "if the injured or killed employee has not been continuously employed for the period of thirty (30) days immediately preceding the injury or death, * * *." The obvious intent of this language is that in determining the "average monthly wage" of an injured workman, the minimum period of employment to be considered as a "wage history" is thirty days. Petitioner's position on each of his propositions is untenable.

Award set aside.

LA PRADE, C. J., and WINDES, PHELPS and STRUCKMEYER, JJ., concur.