409 P.2d 302

**Andrew MEADOR, Petitioner,**

**v.**

**The INDUSTRIAL COMMISSION of Arizona and the Town of El Mirage, Respondents.**

**1 CA–IC 15.**

Court of Appeals of Arizona.

Jan. 4, 1966.

Rehearing Denied Feb. 3, 1966.

Review Denied Feb. 23, 1966.

Chris T. Johnson, Phoenix, for petitioner.

Robert K. Park and Joyce Volts, Phoenix, for respondents.

CAMERON, Judge.

This is a writ of certiorari to review the lawfulness of an award of the Industrial Commission of Arizona, finding that the petitioner suffered no physical disability or loss of earning capacity as a result of an industrial accident occuring 24 May, 1963.

The claimant, prior to this accident, suffered an injury to his right arm and shoulder on 2 August, 1961. As a result of that particular injury, it was found by the Commission that he had a 15% functional loss of the right arm, and the Commission, on 11 May, 1962, entered findings and award for scheduled permanent partial disability. Based on that 15% functional loss to the right arm, the petitioner received compensation in accordance with the statute in the amount of $115.00 per month for nine months. On 4 February, 1963, the applicant petitioned to reopen this claim, and was thereafter examined by a board of medical consultants, and according to the Response to the Petition for Writ of Certiorari filed by the Industrial Commission, the petition to reopen his previous claim was denied on 13 March, 1963, on the grounds that the "medical experts were of the opinion that his disability at that time was less than the 15% functional loss of the right arm previously awarded."

On 24 May, 1963, petitioner was employed as a maintenance man, garbage collector and truck driver for the town of El Mirage. While so employed, he suffered an injury to his right shoulder, a separation which necessitated surgical correction. Surgery was performed on 31 May, 1963, and he remained under the care of his physician for a full year until 1 April, 1964, when he was re-leased as capable of returning to his regular work.

Petitioner returned to his old job with the town of El Mirage. He worked approximately three weeks, until on the night of 23 April, 1964, when the town council, as explained by letter to the petitioner, "Upon consideration of the findings of the Street Commission", " * * * regretfully took action at the meeting on April 23 instructing the Town Clerk to advise you that your services should be terminated on April 24, 1964." The letter continued:

"This action was deemed necessary by reason of the fact that your physical condition after your injury is such that you are not able to exert yourself as the demands of the job require.

"The Council wishes to extend its regrets at having to take such action and to commend you for services that you have performed for the Town in the past."

Petitioner was then 52 years of age and had been employed in that same job for five years before the accident of 1963. The Commission referred petitioner to a group consultation, and on 27 May, 1964, he was examined by four doctors who reported, "partial permanent functional impairment is referred to the upper right extremity and is estimated at 15% functional loss of the right arm."

On 30 June, 1964, the Commission issued its findings and award, extending partial temporary disability compensation from 24 April, 1964, to 27 May, 1964, but finding that petitioner had no physical disability resulting from the accident of 24 May, 1963. Petition for Rehearing was filed and a hearing held 15 September, 1964. From the Decision Upon Rehearing and Order Affirming Previous Finding and Award, the petitioner brings this writ.

The petitioner presents essentially two questions for our consideration: (1) Is the award of the Commission reasonably supported by the evidence? (2) Does the

fact that petitioner suffered a prior compensable accident and injury, considered in conjunction with the second accident and injury, bring the latter accident within the "unscheduled" classification of A.R.S. § 23–1044, subsec. C?

We will first consider whether the award of the Commission is reasonably supported by the evidence. Where the sufficiency of the evidence to substantiate a conclusion of the Industrial Commission is challenged, the reviewing court must examine all evidence, not as triers of facts, but for the purpose of determining whether there was before the triers, reasonable evidence supporting its findings and conclusions. Russell v. Industrial Commission, 98 Ariz. 138, 402 P.2d 561 (1965); Eck v. Industrial Commission, 1 Ariz.App. 505, 405 P.2d 296 (1965). The petitioner had, as a result of his accident in 1961, received a scheduled award based upon a 15% physical functional disability to the right shoulder and arm. Upon petition for rehearing in that matter, the medical board in consultation, concluded on 5 March, 1963, that petitioner's condition had improved so that he was suffering less than a 15% physical functional disability. Petitioner was then reinjured on 24 May, 1963. This injury required surgery and petitioner was under a physician's care for a full year. When re-examined by medical consultation board, on 27 May, 1964, the board reported a partial permanent functional impairment of 15% functional loss to the right arm.

The Commission's finding that there was no physical disability to the right arm as a result of the 1963 accident, is not consistent with the facts. The 1964 medical board's report was interpreted by the referee at the 15 September, 1964, hearing as meaning, "the applicant did not have a disability in excess of that previously found." The language in the report, however, clearly stated the medical board's finding:

"In the opinion of the consultants the patient's condition, as related to the right shoulder, is now stationary and further treatments or examinations with reference to the shoulder are not required. The partial permanent functional impairment is referred to the upper right extremity and is estimated at 15% functional loss of the right arm."

The medical board made no attempt in its report to relate the percentage of disability to one or the other accident. It merely estimated petitioner's disability on the date of that examination at 15%. The meaning of the medical board's report was misinterpreted by adding the idea that the 15% disability was not in excess of that previously found, when in fact the doctors only stated that when they examined him he had a 15% disability. It having been found by a medical board some two and one-half months before the second injury that the petitioner's disability was less than 15%, it is clear that petitioner has suffered some permanent functional disability to the right arm as a result of the second accident. The Commission's finding that petitioner suffered no physical disability as a result of the 1963 accident is not supported by the evidence.

Other conflicts between the evidence and the Findings and Award of the Commission concern petitioner's attempt to return to his old job in April of 1964. The Commission argues that the fact that petitioner attempted to return to work, and for three weeks drove a garbage truck is evidence of his physical capability to perform this work. This is in direct conflict with the evidentiary fact that he was discharged by the town of El Mirage after his three-week attempt to perform the duties of his old job, because he was physically unable to perform those duties. The Commission further states in its brief:

"That the petitioner refused to perform his usual work, and has been discharged for failing to do so, is not proof of the fact that he cannot work solely because of a physical disability arising from his injury."

As is noted in the letter notifying petitioner of his discharge by the town of El Mirage, petitioner was discharged from a job he had satisfactorily performed for five years because after the second accident and surgery his employer felt petitioner was physically incapable of performing his duties. Petitioner had performed this job prior to that accident. He had returned to that job after his injury in 1961. The employer had a basis of experience upon which to formulate his opinion of the petitioner's physical ability after the second accident and surgery. In addition to the letter from the employer, the town council, petitioner introduced the testimony of a former councilman and member of the street commission, a member of the town police force, and a resident of El Mirage, who testified in substance that they were familiar with the petitioner, that they had observed him working after the first accident, and they had observed his inability to perform his job after his second accident and surgery.

The Commission dismisses the testimony of the lay witnesses with the statement that they were deceived by the hypochondriacal mannerisms of the petitioner. The Commission's brief indicates the great amount of reliance placed upon the report of a psychiatrist who examined the petitioner while he was hospitalized after surgery. The psychiatrist was not present at the hearing and was not available for cross examination. Since the petitioner neither asked to cross examine the psychiatrist nor objected to the admission of the report, we have felt free to consider said report dated 19 June, 1963. The report describes the petitioner as immature, intellectually borderline, with childish compensation mechanisms that have hypochondriacal coloring. However, the doctor further stated that the petitioner likes to please and can be reassured and returned to work if effectively encouraged. The report concludes by stating:

"Should the patient not make adequate progress, in accordance with organic

recovery, further psychiatric evaluation may become advisable."

This report was made eleven months prior to petitioner's return to work and subsequent discharge, and no further psychiatric examination is reflected in the files.

The law of our State is that the Commission must take the workmen as it finds them, Murray v. Industrial Commission, 87 Ariz. 190, 349 P.2d 627 (1960), that is, it cannot insist in the instant case that petitioner be other than the immature person with hypochondriacal tendencies and a fifth-grade education that he in fact is. The psychiatric report in our opinion indicates the type of claimant the Commission must deal with, and is not substantive evidence to impeach every word of testimony given by petitioner and in addition every word of testimony given by petitioner's lay witnesses at the hearing.

This case must be distinguished from the recent Arizona Supreme Court case of Chavarria v. Industrial Commission, Ariz., 409 P.2d 26, filed 23 December, 1965, in which the court in affirming an award denying compensation stated:

"It is apparent from the report of the Psychiatric Advisory Board and Dr. McGrath's testimony that petitioner has a basic personality pattern of the passive dependency type coupled with an anxiety neurosis and that, if he were not dependent for support upon workmen's compensation, he would return to some form of gainful employment." Chavarria v. Industrial Commission, supra.

The testimony adduced at the hearing does not support this type of finding by the Industrial Commission in the instant case. The testimony of the lay witnesses indicates just the opposite, that petitioner attempted to return to work and was unable to perform his assigned labors as a result of his physical disability:

"Where the evidence of a claimant is corroborated by disinterested witnesses,

it may not be disregarded and the reasonable statements of unimpeached witnesses are presumed true when uncontradicted." Adkins v. Industrial Commission, 95 Ariz. 239, 242, 389 P.2d 118, 120 (1964).

The next issue raised by petitioner is whether the second successive injury brings this case under A.R.S. § 23–1044, subsec. C, to be .treated as an "unscheduled" injury for the determination of the amount of compensation due petitioner. The effect of successive injuries upon the computation of workmen's compensation was fully discussed by our Supreme Court in Morris v. Industrial Commission, 81 Ariz. 68, 299 P.2d 652 (1956). The Court followed dictum laid down in Ossic v. Verde Central Mines, 46 Ariz. 176, 49 P.2d 396 (1935), that if two scheduled injuries are received at different times, the Commission is directed to determine the entire disability as it exists after the second injury. The Court was emphatic in stating that the legislature has in explicit language directed that the Commission shall not compute disability awards in successive injury situations on the basis of the scheduled injuries section. More recently the Arizona Supreme Court cites the many cases interpreting A.R.S. § 23–1044, subsecs. C, D, and E, and states:

> "All of these cases bear out the Commission's position, i. e., they require the Commission to take into consideration a previous disability as it exists at the time of a subsequent injury, and if any disability results from the subsequent injury, whether scheduled or unscheduled, or both, the Commission must treat the disabilities as general or unscheduled in nature, and base its award on loss of earning capacity only, as derived from the facts of the case." Woods v. Industrial Commission, 91 Ariz. 14, 17, 368 P.2d 758, 759 (1962).

In the Morris v. Industrial Commission case, supra, as here, the Commission made an attempt to apportion the loss for the first injury from the scheduled loss' for the second injury. The Court in the Morris v. Industrial Commission case, supra, terms this a "futile attempt" to comply with A.R.S. § 23–1044, subsec. E. It concludes that:

> "The language of the statute—both subsections (d) and (e)—plainly infers that the previous disability must be re-evaluated as of the time of the subsequent award." Morris v. Industrial Commission, 81 Ariz. 68, 73, 299 P.2d 652, 655, supra.

The petitioner is over fifty years old. He is by the Commission's insistence, immature, poorly educated and has hypochondriacal tendencies. His employment was in a job requiring heavy manual labor with emphasis on the use of the arms and shoulders to lift and dump garbage cans into the garbage truck which he also drove, and to use a shovel to repair streets when this was necessary. The Commission's doctor at the hearing testified that petitioner was 15% functionally disabled in his right shoulder and hence in the use of his right arm. The petitioner attempted to return to work at his old job and was dismissed because his physical condition in his employer's opinion made it impossible for him to perform his work. He introduced testimony of men who had watched him at work that his physical movement was limited after his accident.

■■■ In our opinion, the only reasonable interpretation of evidence supports the petitioner's contention that the accidental injury has caused him a loss of earning capacity. This being a second injury, the law is clear that the Commission must evaluate this as an unscheduled injury, and determine compensation on the basis of loss of earning capacity.

The award is set aside.

STEVENS, C. J., and DONOFRIO, J., concur.