448 P.2d 425

**Harvey R. LAMB, Petitioner,**

v.

**The INDUSTRIAL COMMISSION of Arizona, Respondent Insurance Carrier,**

**The O. S. Stapley Company, Respondent Employer.**

**No. I CA–IC 212.**

Court of Appeals of Arizona.

Dec. 16, 1968.

Rehearing Denied Jan. 21, 1969.
Review Denied Feb. 11, 1969.

Gorey & Ely, by Herbert L. Ely, Phoenix, for petitioner.

Robert D. Steckner, Chief Counsel, by Dee-Dee Samet, Phoenix, for respondent Industrial Commission of Arizona.

CAMERON, Chief Judge.

This is a writ of certiorari to review the lawfulness of an award of the Industrial Commission of Arizona which found that the petitioner had sustained a 15% loss of function of the left (minor) arm and awarding petitioner total temporary disability for approximately one year and permanent partial disability for seven and one-half months as prescribed by § 23–1044, subsec. B, A.R.S. for a "scheduled" disability.

We are called upon to determine whether or not the Commission erred in failing to consider petitioner's pre-existing emphysema as a "previous disability" along with the industrial injury and treat the matter as an "unscheduled" injury. (§ 23–1044, subsecs. C, D and E.)

The facts necessary for a determination of this matter are as follows. The petitioner was employed as a heavy equipment salesman for the O. S. Stapley Company in Mesa, Arizona. As part of his duties, he was required to lift heavy merchandise. While he was helping to lift an acetylene tank, 19 February 1964, his foot slipped and he fell backward with the tank striking his back and shoulder on the side-board of a truck. The petitioner received considerable medical attention including surgical manipulation of his left shoulder. On 10 February 1965, a medical consultation board concluded that his condition was stationary and that he had a "permanent par-

tial disability equivalent to a 15% functional loss of the left arm". During this time petitioner was unable to return to his regular work except for 32 hours in March of 1964.

On 23 March 1965 the Commission entered their findings for temporary disability and "also a permanent partial disability equal to 15% loss of function of his left (minor) arm", entitling petitioner to compensation monthly for a period of seven and one-half months, as provided in A.R.S. § 23–1044, subsec. B, (13) and (21). Petitioner protested the award and asked for a hearing which was held 2 August 1965. Petitioner was not represented by counsel at his hearing. The fund was represented by counsel, and testimony was received from the petitioner as well as from a medical doctor previously selected by the Commission to examine the petitioner. The doctor testified when questioned about surgical correction of petitioner's shoulder:

"The Referee: The surgery was ruled out primarily because of his emphysema?

"A I think so. Of course, he had a functional range here, a good functional range when he didn't have to lift his arm. That was the last group consultation. They didn't expect him to do any heavy lifting or lift above his head, because he couldn't raise his arm up there."

After the hearing on 2 August, petitioner obtained the services of an attorney for the first time. The report of the referee recommended that the previous findings for a scheduled award be affirmed. From the findings and order of the Commission affirming the report of the referee, petitioner requested a hearing which was held 22 June 1966.

At the hearing petitioner's doctor, Phillip F. Hartman, D.O., was asked, "whether there was an aggravation of the pre-existing emphysema traceable to the injury for which you did treat him?", and he replied, "I believe that his condition was aggravat-ed by the injury." The referee thereafter recommended that the Commission rescind its previous determination of a scheduled award and enter an "unscheduled" award. The attorney for the fund protested the referee's recommendation and requested another medical consultation. A hearing was held 15 November 1966 to allow petitioner to cross-examine. The only witness to testify at the November hearing was the medical doctor requested by the Commission. He testified that it was his opinion that the injury did not have any effect on his present degree of emphysema, but that it might have affected his breathing capacity during the relatively acute period of the injury. He further testified as follows:

"Q Doctor, on the last page of your report, don't you express surprise? I am quoting:

'It seems that during the last few months of his employment he states that he could lift heavy weights and do the work of hard physical labor. I do not believe he was capable of sustained physical effort as this degree of pulmonary emphysema does not develop in just a few months.'

"A Right.

"Q Doctor, does this not connote, then, that what you saw on August 19, 1966, that you found it obviously hard to believe that he could have been doing hard physical labor in February 1964 and be in the condition that you saw him in on August 19, 1964?

"A Yes."

Following the hearing the referee again recommended that the matter be treated as an unscheduled as opposed to a scheduled disability. On 26 January 1967 the Commission, ignoring the recommendations of the referee, again reaffirmed the previous scheduled award.

On 7 March 1967 petitioner again requested a hearing and, after much delay,

during which time the attorney for the fund submitted the file to two or three different physicians for review, hearing was held on 24 January 1968.

The attorney for the fund called one doctor to appear and after many pages of fruitless and difficult cross-examination during which the doctor did testify that even though he had never examined the petitioner that:

"* * * The injury could in my opinion not in any way have any effect upon the patho-physiological diagnosis of emphysema. But yes, the injury could in a symptomatic way cause a patient to become more aware of the fact that he has less pulmonary reserve left so that the work of breathing which people with pulmonary emphysema have, the work of breathing is accentuated because of the fact that the pain sensations such a shoulder injury would produce."

This hearing (on 24 January 1968) was before a new referee who after the close of testimony stated to the attorney for the fund:

"* * * I am not criticizing you, as a matter of fact, I have great admiration for your tenacity in this case. My criticism is a broader one, and it's not the first time I've stated it on the record. I'm new to the Commission, I am here two months, and I have noted that in cases before the Commission it tends to develop into a game between counsel for The Fund and counsel for the claimant in which each one after a decision has been rendered by the Commission attempts to bring after acquired evidence and attempts to be the last one to bring in after acquired evidence to try to refute a decision that has already been made. My criticism, counsel may not like it when you read the record, but the procedure is loose, it goes on forever, hearing is granted after hearing, when, as a matter of fact, there should be a hearing and decision and thereafter if

new things should develop there should be a petition to reopen. My criticism is not with you, it's the procedure here that is lax, loose and uncalled for."

On 23 April 1968 the Chief Referee·made his report in place of the referee at the hearing who was no longer with the Commission. The Chief Referee recommended that the matter be treated on the basis of a scheduled disability and recommended a final award. This was done on 24 May 1968 (some four years and three months after the injury) and the petitioner brings this appeal.

■ It is the contention of the petitioner that his previous emphysema when considered in connection with his industrial injury to the shoulder makes the case an unscheduled disability as provided in subsections C, D and E of § 23–1044 A.R. S. The evidence is abundantly clear that petitioner's prior emphysema pre-existed the date of the injury and that even though he fulfilled his daily job requirements he was suffering from the effects of the emphysema at the time of the injury. There was adequate testimony from which the Commission could (and we believe should) have found that the industrial accident aggravated his present emphysema, but this is not the question before the Court. The question is whether or not the emphysema standing alone was such a disability that when added to the industrial injury there was an increased disability over and above what might be reasonably expected from the industrial injury itself:

"* * * If it is or was partially disabling before or at the time of the accident and continues to be so, this partial disability combined with the 50% loss of function to the left leg would operate to convert the award from a scheduled award to an unscheduled award. Goodyear [Aircraft Corp.] v. Industrial Commission, 89 Ariz. 114, 358 P.2d 715 (1961).

"In the instant case, disability to the leg combining with the partial disability of

the preexisting hypertension (even though not symptomatic until the industrial accident) might well result in further or increased disability which must be compensated as an unscheduled award rather than a scheduled award." Ronquillo v. Industrial Commission, 5 Ariz.App. 233, 235, 425 P.2d 135, 137 (1967).

And our Supreme Court has stated:

"This Court has on many occasions interpreted A.R.S. § 23–1044, subds. C, D, and E, supra. Hurley v. Industrial Commission, 83 Ariz. 178, 318 P.2d 357; Morris v. Industrial Commission, 81 Ariz. 68, 299 P.2d 652; McKinney v. Industrial Commission, 78 Ariz. 264, 278 P.2d 887; but Cf. Goodyear Aircraft Corp. v. Industrial Commission, 89 Ariz. 114, 358 P.2d 715. All of these cases bear out the Commission's position, i. e., they require the Commission to take into consideration a previous disability as it exists at the time of a subsequent injury, and if any disability results from the subsequent injury, whether scheduled or unscheduled, or both, the Commission must treat the disabilities as general or unscheduled in nature, and base its award on loss of earning capacity only, as derived from the facts of the case. Ossic v. Verde Central Mines, 46 Ariz. 176, 49 P.2d 396; Ujevich v. Inspiration Consolidated Copper Company, 42 Ariz. 276, 25 P.2d 273." Woods v. Industrial Commission, 91 Ariz. 14, 16, 368 P.2d 758, 759 (1962).

Petitioner cites Wollum v. Industrial Commission, 100 Ariz. 317, 414 P.2d 137 (1966) as standing for a contrary proposition. With this we do not agree. The prior physical disability in Wollum, supra, was the loss of a distal phalanx of the finger which occurred as a child and in no way contributed to the workman's disability at the time of the injury or thereafter. In the instant case the petitioner was working to the limit of his slowly worsening emphysema and although this disability may have been tolerated at the time, it was nevertheless present and being present when considered along with the 15% loss of function of the minor arm results in an unscheduled disability pursuant to subsections C, D and E, § 23–1044 A.R.S., rather than a scheduled disability under subsection B.

■ Although the function of this Court is limited to setting aside or affirming the award of the Industrial Commission, A.R. S. § 23–951, subsec. D, Schnatzmeyer v. Industrial Commission, 78 Ariz. 112, 276 P.2d 534 (1955); Lewis v. Industrial Commission, 2 Ariz.App. 522, 410 P.2d 144 (1966), it cannot but note the great length of time that has transpired in processing this matter through the Industrial Commission. Also noted is the allegation by the attorney for the petitioner that the Commission and the attorney for the fund spent a good portion of this time "doctor shopping" for a physician who would by testimony create a sufficient conflict upon which the Commission could bottom a decision contrary to the petitioner's position and the great weight of the medical testimony in the file. Naturally we are unable to determine what was in the minds of the Commission and the attorney for the fund and can only set forth what is reflected from the record. We agree, however, with the comments of the referee at the January 1968 hearing whose tenure with the Commission was so short-lived. The file reflects that some 12 doctors in addition to 4 roentgenologists have either examined, consulted, or testified regarding petitioner. Four formal hearings have been held and the Commission appears to have delayed at every step of the way its decision in the matter despite the evidence, the recommendations of the referees, and the pleas of the petitioner and his attorneys.

Although it was apparent that petitioner would be entitled to at least seven and one-half months of compensation based on the scheduled award, payment was stopped on the check for this amount after the 8

September 1965 award when petitioner was found to have protested said award. In fairness, it should be noted that the Chief Referee on 16 August 1966 recommended that the amount be paid over to petitioner which "could be credited against other sums due him should it develop that this is an unscheduled disability". This was done by the Commission on 22 August 1966.

The file before the Court does nothing to allay the fears expressed by many counsel before the Court, in oral argument after oral argument, as to the one-sidedness of the Commission procedure and does little to urge this Court to view their actions in a most favorable light. Our Supreme Court has stated:

"Nor do we consider the role of the Commission to be that strictly of an adversary at a proceeding in which it acts also in a judicial capacity, especially when the employee, as here, does not appear before it represented by counsel. The position of the Commission is cast in much broader terms. Thus, A.R.S. § 23–942 provides:

'The commission shall not be bound by the rules of evidence or by technical or formal rules of procedure other than as provided in this chapter. The commission may conduct investigations in such manner as in its judgment is best calculated to ascertain the substantial rights of the parties and to carry out the spirit of this chapter.'

"Consequently, it is as much the task of the Commission to encourage and evaluate fairly proper claims as it is to expose and reject improper ones. No less is required if the Commission is to fulfill its duty 'to ascertain the substantial rights of the parties and to carry out the spirit' of the statute which it has the responsibility to administer." Allen v. Industrial Commission, 87 Ariz. 56, 68, 347 P.2d 710, 718 (1959).

The award is set aside.

DONOFRIO and STEVENS, JJ., concur.