487 P.2d 411

Daniel J. LEARY, Jr., Petitioner,

v.

The INDUSTRIAL COMMISSION of Arizona, Respondent,

Early Fat Livestock Feed Company, Respondent Employer,

State Compensation Fund, Respondent Carrier.

No. I CA–IC 591.

Court of Appeals of Arizona, Division 1, Department A.

July 26, 1971.

Langerman, Begam & Lewis by Jack Levine, Phoenix, for petitioner.

William C. Wahl, Jr., Chief Counsel, The Industrial Commission of Arizona, Phoenix, for respondent.

Robert K. Park, Chief Counsel, State Compensation Fund by Gene Phillippo, Phoenix, for respondent carrier.

STEVENS, Presiding Judge.

Daniel J. Leary, Jr., hereinafter referred to as the petitioner seeks to convert an award for a scheduled injury into an award for an unscheduled injury based upon disabilities other than the injury to his leg. This case is decided under the law as it existed prior to 1 January 1969 and citations to the Arizona Revised Statutes will be as those sections existed prior to 1 January 1969.

The petitioner sustained a severe injury to his left leg on 24 March 1966. The petitioner was then 23 years of age. An award was entered on 15 January 1970 establishing a 20% loss of function of his left leg. Timely procedures followed. A two-phased hearing was held on 11 June 1970 and 5 ·August 1970. The award in question was dated 29 October 1970 and the matter has been brought to this Court for review.

Between the time of the injury and the 15 January 1970 award, petitioner was subjected to a number of surgical procedures involving both orthopedic surgery and skin grafting.

At the time of his injury the petitioner's employment required heavy manual work and various types of welding and maintenance work. In the interval between his injury and the various surgical procedures the petitioner worked for a time at his old job, as a storekeeper for the Arizona Welfare Department, as a map reader and draftsman for the county assessor, in the operation of a small restaurant with his wife, and finally, at the time of the hearing, he was employed at the Arizona State Prison as a Corrections Officer. These duties are sometimes referred to as the duties performed by a guard inside the prison, they require considerable physical movement and at times physical exertion.

·We can best outline the petitioner's contentions by quoting from the petition for hearing which led up to the above-referred to two-phased hearing. The petition asserted that:

"* * * the Findings and Award, Order or Decision entered on January 15, 1970 is unjust, unlawful and not supported by the evidence, for the following reasons, to wit: In addition the permanent partial disability equal to 20% loss of function of the left leg applicant has other disabilities, to wit: A permanent chronic and disabling asthmatic condition, permanent chronic and disabling back injuries, permanent chronic and disabling neck injuries, permanent chronic and disabling obesity, permanent chronic and disabling allergies, perma-

nent chronic and disabling injuries to the left hip; all or any of which would convert the present award for scheduled permanent disability to an award for unscheduled permanent disability. Further, the loss of function of applicant's left leg is greater than 20%. And further, applicant's period of total temporary disability is more extensive than that set forth in the Award."

We will discuss the several contentions urged by the above-referred to petition.

■ The percentage of loss of function of a bodily extremity is a matter peculiarly within the field of medical testimony. It may well be that a scheduled injury sustained by one man may be much more disabling of the whole man than the same percentage scheduled injury sustained by another man. Scheduled injuries and the compensation therefor are set forth in A. R.S. § 23–1044, subsec. B. The law does not look at the whole man in determining the monthly amount or the duration of the payments. In our opinion, the evidence did not show an error in the 20% computation.

We do not find a serious effort to establish longer periods of periodic total temporary disability. The final award appears to reflect the interim determination of the periods of total temporary disability, these arising largely at those periods of time when it was necessary for the petitioner to submit to surgical procedures.

■ With reference to the left hip, the petitioner testified that bone was removed from that hip for use in bone grafts in the left leg and that this left a residual of discomfort, tenderness and muscle spasms when he is required to do much walking. There was no medical evidence in relation to any permanent physical functional disability arising therefrom. In scheduled injuries the situs of the residual disability is controlling. Arnott v. Industrial Commission of Arizona, 103 Ariz. 182, 438 P.2d 419 (1968), and Bradley v. Industrial Commission of Arizona, 13 Ariz.App. 204, 475 P.2d 296 (1970). In our opinion the file does not disclose proof of the asserted disability in relation to the left hip.

The petitioner injured his coccyx when he was 11 years old and again when he was 15 years old. This injury apparently has resulted in some low back discomfort after periods of heavy exertion.

Shortly after the petitioner graduated from high school in the year 1960, he injured his neck while diving in the course of his recreation while swimming. This has caused some discomfort two or three times a year.

The petitioner's family came to Arizona in 1959 for the health of his mother and because of his long-standing asthma. Under some conditions of employment his asthma would become acute.

Prior to his March 1966 injury these physical problems had only short time effects upon his continued employment. Prior to his March 1966 injuries his wage scale as a workman was fully competitive with those of his fellow workers and his work was satisfactory when compared with that of his fellow workers.

There are situations wherein the Arizona Courts have recognized that the physical condition which preexisted a scheduled injury, as a matter of law, converted the scheduled injuries to an unscheduled classification. In McKinney v. Industrial Commission of Arizona, 78 Ariz. 264, 278 P.2d 887 (1955), our Supreme Court ruled that the prior loss of a workman's leg converted a scheduled injury to an unscheduled classification. In Edwards v. Industrial Commission of Arizona, 3 Ariz.App. 290, 413 P.2d 800 (1966), this Court reached a similar conclusion where the injured workman had previously lost a major arm. A doctor's testimony is quoted in Lamb v. Industrial Commission of Arizona, 8 Ariz. App. 581, 448 P.2d 425 (1968), testimony to the effect that the injured workman's emphysema was so advanced that the doctor found it difficult to believe that the injured workman could engage in sustained physical effort. This prior physical condition persuaded this Court to determine that

the man's injury must be converted to the unscheduled classification. Likewise the total deafness of the injured individual prior to her industrial injury persuaded this Court to hold that her injury was of an unscheduled classification. See Leon v. Industrial Commission of Arizona, 10 Ariz.App. 470, 459 P.2d 749 (1969). Our Supreme Court denied review in both Lamb and Leon.

■■ The above-cited cases are the exceptions rather than the rule. The general rule is that when physical infirmities exist prior to an industrial injury of a scheduled classification there arises a fact question as to the effect of the prior physical infirmities upon the workman's earning capacity. A.R.S. § 23–1044, subsec. E. The Court of Appeals in Ronquillo v. Industrial Commission of Arizona, 14 Ariz.App. 499, 484 P.2d 652 (1971), after citing previous Supreme Court cases relating to the definition of "previous disability" stated:

> "That definition of 'previous disability' requires that the condition which the injured party has at the time of the injury in question [the later injury] have an adverse effect on earning capacity." 14 Ariz.App. at 500, 484 P.2d at 653.

Absent compelling situations similar to those in the four cases hereinbefore cited and absent a finding of a loss of earning capacity arising out of and by virtue of the prior physical infirmities, the scheduled injury will not be converted to the unscheduled classification. In the matter under consideration The Industrial Commission made no finding of a prior loss of earning capacity and our review of the evidence supports an absence of such a finding.

We then come to the question of obesity. At the time of his injury the petitioner weighed approximately 185 pounds and at the time of the hearing he weighed approximately 265 pounds. The orthopedic surgeon who attended him had suggested to the petitioner that there needed to be weight control; this suggestion being made during the period of medical care. The doctor stated that the petitioner " * * *

wasn't very successful at it." The doctor expressed the opinion that weight control would be beneficial to the injured ankle. He also expressed the opinion that a reduction in weight would reduce any asthmatic problems experienced by the petitioner.

The weight problem appears to be a diet problem. The weight problem did not exist at the time of the injury. Even should it be possible to establish that the weight problem bore a recognizable causal relationship to the industrial injury and was a disability arising out of the industrial injury, we do not view the record as establishing such a proposition.

We find no proper basis to set aside the award and

The award is affirmed.

CASE, J., and ROBERT E. McGHEE, Superior Court Judge, concur.

NOTE: The Honorable FRANCIS J. DONOFRIO requested that he be relieved from the consideration of this matter. The Honorable ROBERT E. McGHEE, Judge of the Superior Court was called to participate in the place of Judge DONOFRIO.