494 P.2d 58

Robert SORDIA, Petitioner,

v.

The INDUSTRIAL COMMISSION of Arizona, Respondent,

D. F. Mathes Gunite Corporation, Respondent Employer,

Fidelity & Casualty Company of New York, Respondent Carrier.

No. 1 CA–IC 616.

Court of Appeals of Arizona, Division 1, Department A.

March 7, 1972.

Langerman, Begam & Lewis, P. A. by Jack Levine, Phoenix, for petitioner.

William C. Wahl, Jr., Chief Counsel, The Industrial Commission of Arizona, Phoenix, for respondent.

Gust, Rosenfeld & Divelbass by James M. Koontz, Phoenix, for respondent employer and respondent carrier.

STEVENS, Presiding Judge.

The petitioner sustained a compensable industrial injury to his left knee on 19 May 1969. Surgery was performed on the knee on 29 July 1969. The attending orthopedic surgeon released the petitioner for work on 17 October 1969 but the petitioner was unable to follow his usual occupation. The petitioner was reexamined on 17 November 1969 and released for work. The doctor testified that as of that date the petitioner was not ready for discharge. In December the petitioner was again released for work only to discover that after 1½ days on his old job he was unable to continue. On 5 January 1970 the orthopedist again examined him and at this time rated his disability as 5% of the left leg and "* * * he was told to return to work * * *."

On 7 January 1970 the carrier issued two notices of claim status. One of these advised the petitioner that his temporary disability was terminated on 3 November 1969 because he had been released for work and had been discharged. This notice also informed him that his medical benefits were terminated on 1 December 1969. The second notice informed the petitioner that his disability rating was a "5% functional loss of left leg" and that he would receive as compensation "2½ months at $422.47 a month. First payment due January 1, 1970, and monthly thereafter until paid."

By and through his counsel the petitioner seasonably requested a hearing urging in part that his disability was greater than 5%; that he was unable to return to work; that his condition was not stationary; and that the petitioner required further medical care. The hearing was held on 16 September 1970. Between the time of the above-referred to notices of claim status and the hearing the petitioner secured part-time work, working as many hours as his left leg would permit. He testified that his capacity to work was reduced by the swelling of his knee, the pain in his knee, and the loss of strength in his knee. Following the notices of claim status and prior to the hearing he submitted himself to treatment by Victor J. Haag, D.C., who called upon Dr. Max Taylor, M.D., David Rabinowitz, D.O. and others for consultation.

The hearing officer rendered his award enlarging the period of medical benefits to the date of the last examination by the attending orthopedic surgeon, that is, to 5 January 1970. The award found that the petitioner's condition became medically stationary on the aforesaid date. The award allowed the petitioner total temporary disability compensation " * * * from May 19, 1969, through July 17, 1969, inclusive * * *" (We note that this date is 12 days prior to the date of his knee surgery.) and allowed the petitioner temporary partial disability compensation " * * * from July 18, 1969 through January 5, 1970, inclusive." The award affirmed the statements contained in the two notices of claim status as to the petitioner's percentage of functional disability of his left leg and to the permanent compensation to be paid.

During the testimony at the hearing, evidence was presented as to the pain, the swelling, and the lack of strength in the left knee. The attending orthopedic surgeon testified that had the plaintiff returned to him after 5 January 1970 with these complaints he would have examined him and, if appropriate, treated him. He testified that if the matters which were brought out by other evidence were found to exist it is possible that the petitioner's percentage of disability should be increased. The evidence indicates that the petitioner's post-surgical problems were not usually experienced as an aftermath of the surgery here involved. The doctor did not approve of all of the treatment which the petitioner received after 5 January 1970 nor did he disapprove of some phases of the treatment, generally stating that to reach a professional opinion it would be necessary for him to personally see and examine the petitioner.

In his questioning of the petitioner the hearing officer brought out that the petitioner had not sought the permission of the Commission or the carrier to receive care from other than the attending orthopedic surgeon. No questions in this area were presented by the attorney for the carrier.

In the award the hearing officer was highly critical of the fact of medical care subsequent to 5 January 1970. We quote:

" * * * that it is further recognized that applicant obtained rather extensive chiropractic and/or naturopathic attention to his left knee, commencing in February 1970, but there is no reasonable evidence to establish that said treatment was necessary or beneficial; that the most reasonable inference from the evidence is that the treatments may have been detrimental to the applicant's knee condition; furthermore, the aforesaid examinations and/or treatments were obtained and undertaken without the authority of the Commission or the Defendant Insurance Carrier as required by 'old' Commission Rule 59(a), in effect at the time here involved, and reincorporated in 'new' Commission Rule 13(b), in effect at time of hearing; that inasmuch as timely request for hearing had been filed (sic) to Defendant Insurance Carrier's NOTICE OF CLAIM STATUS, the Commission had continuing jurisdiction in the premises (see analogous case of Russell v. Industrial Commission of

Arizona (1968), 8 Ariz.App. 563, 448 P. 2d 407, under 'old' law); that the obtaining of such treatment contrary to Commission Rules was entirely unreasonable in the premises, particularly in that the attending orthopedic surgeon, Dr. Hartman, was at all times willing and able to reexamine and/or treat applicant if the same had been in fact necessary; that the practice engaged in could only lead to 'doctor shopping', a practice clearly condemned by our Courts (Lamb v. Industrial Commission of Arizona (1968), 8 Ariz.App. 581, 448 P.2d 425)."

This Court is unable to find evidence in the transcript which supports the statement of the hearing officer " * * * that the most reasonable inference from the evidence is that the treatments may have been detrimental to the applicant's knee condition * * *." The petitioner testified that but for the periodic treatment received from Dr. Haag he would not have been able to work as many hours as he did work. We fail to find a proper basis for the hearing officer's statement that " * * * there is no reasonable evidence to establish that said treatment was necessary or beneficial * * *."

We quote "old" Rule 59(a) and "new" Rule 13(b) in the footnote.[1]

In our opinion these Rules must be given a reasonable construction and they are not applicable where, as here, the attending physician has finally discharged the petitioner and told the petitioner "to return to work" even though, as here, the matter was still open pending the first formal hearing. As to the "doctor shopping" the petitioner in good faith sought care which he believed was necessary and beneficial in enabling him to engage in some gainful employment. We hesitate to classify this as doctor shopping. In view of the finality of the discharge and the directive to return to work which the petitioner received in 1970 and in view of the petitioner's attempts to work and the physical problems resulting therefrom, we can understand his desire to seek additional aid. We do not by this statement grant blanket approval for each such future instance.

We regret the necessity of stating that from a reading of the 116-page reporter's transcript of the hearing we can come to only one conclusion which is that the hearing was not conducted in the judicial and impartial atmosphere which is to be required of a judicial officer whether that person is a superior court judge or a hearing officer conducting a workmen's compensation hearing. We do not believe it necessary to quote passages from the reporter's transcript to support this opinion.

On a timely petition the Commission reviewed and affirmed the hearing officer and the matter was brought to this Court by certiorari.

Without limiting themselves, our primary reason for our directive in this matter is our opinion that the petitioner was not afforded a proper hearing.

The award is set aside.

CASE and DONOFRIO, JJ., concur.

---

1. "59. Employee Must Follow Treatment:—

"(a) Every employee must submit to and follow the treatment and directions of the attending physician employed by his employer, or where the employer is insured for medical treatment by the employer's insurance carrier. An injured employee will not be permitted to voluntarily change from one hospital to another, or from one doctor to another, without the written authorization of the Commission."

"Rule 13. Subsequent Medical Reports; Employee's Obligation to Follow Treatment; Rating of Impairment of Function

\* \* \* \* \*

"(b) Except as provided by law, an injured employee will not be permitted to voluntarily change from one hospital to another, or from one physician to another, without the written authorization of the insurance carrier or the Commission."