414 P.2d 137

James A. WOLLUM, Petitioner,

v.

The INDUSTRIAL COMMISSION of Arizona and Merritt-Chapman & Scott Corporation, Respondents.

No. 8733–PR.

Supreme Court of Arizona,

En Banc.

May 12, 1966.

Rehearing Denied June 7, 1966.

James D. Lester, Charles M. Brewer, Phoenix, for petitioner.

Robert K. Park, Chief Counsel, The Industrial Commission of Arizona, Dee-Dee Samet, Phoenix, for respondents.

McFARLAND, Justice.

Pursuant to Rule 47(b), Rules of the Supreme Court, 17 A.R.S., and A.R.S. § 12–120.24, we granted a petition to review the decision of the Court of Appeals reported in 2 Ariz.App. 392, 409 P.2d 312, which on writ of certiorari affirmed an award of The Industrial Commission of Arizona, hereinafter designated the Commission, to the petitioner in the Court of Appeals, James A. Wollum, hereinafter designated the claimant.

Claimant, an ironworker, was injured within the course of his employment August 1, 1963, while in the employ of re-

spondent Merritt-Chapman & Scott at Page, Arizona. The claimant suffered a compensable injury when a deposit of oil on his shoe caused his right foot to slip inward and under his body, pulling and twisting his right knee. The Commission, in "Findings and Award for Scheduled Permanent Disability," dated September 23, 1964, determined that the claimant had sustained a permanent partial disability of fifteen (15) per cent functional loss of the right leg, and awarded claimant compensation based thereon, to-wit: compensation in the amount of $7,948.34 for total temporary disability, and compensation in the amount of $474.80 monthly for a period of seven and one-half months for permanent partial disability.

Claimant applied for a rehearing, alleging that "[c]ontrary to said findings and award the applicant has sustained an 'unscheduled' permanent partial disability, rather than a 'scheduled' disability," for the reason that:

"1. As a result of a previous accident the applicant lost the distal phalanx of his left index finger. This constitutes a pre-existing disability and has always affected and impaired the applicant's dexterity, the general use of his left hand in the performance of his duties as an ironworker and his earning capacity as such.

"2. As a result of his disability to the right leg, the applicant is now severely handicapped and completely unable to perform many duties in connection with ironwork.

"3. As a result of the complete effect of both disabilities, the applicant has suffered a total loss of earning capacity as an ironworker and has otherwise suffered a substantial loss of earning capacity on the competitive labor market."

The Commission, in its findings and award, dated September 23, 1964, had not mentioned the previous loss of the claimant's distal phalanx of the left index finger.

A rehearing was granted claimant. The "case summary," submitted to the Commission by the referee who conducted the rehearing, stated the following as the basis for his recommendation that the award be affirmed:

"In order for a second scheduled injury to entitle a claimant to an award for loss of earning capacity, the pre-existing scheduled injury must have been affecting his earning capacity at the time of the second injury. The evidence in this case is all to the contrary."

The Commission, by order of March 5, 1965, accordingly made a finding that the previous award of scheduled permanent disability be affirmed.

The issue presented upon this appeal is whether the "previous loss of the distal phalanx of the left index finger, coupled with a fifteen per cent loss of function

of the right leg, constitutes an 'unscheduled' disability under A.R.S. § 23-1044, subsecs. C, D. & E."

"§ 23-1044. Compensation for partial disability; computation

\*　\*　\*　\*　\*　\*

"B. Disability shall be deemed permanent partial disability if caused by any of the following specified injuries, and compensation of fifty-five per cent of the average monthly wage of the injured employee, in addition to the compensation for temporary total disability, shall be paid for the period given in the following schedule:

\*　\*　\*　\*　\*　\*

"21. For the partial loss of use of a \* \* \* leg, \* \* \* fifty per cent of the average monthly wage during that proportion of the number of months in the foregoing schedule provided for the complete loss of use of such member, \* \* \* which the partial loss of use thereof bears to the total loss of use of such member \* \* \*

\*　\*　\*　\*　\*　\*

"C. In cases not enumerated in subsection B of this section, where the injury causes permanent partial disability for work, the employee shall receive during such disability compensation equal to fifty-five per cent of the difference between his average monthly wages before the accident and the amount which represents his reduced monthly earning capacity resulting from the disability, but the payment shall not continue after the disability ends, or the death of the injured person, and in case the partial disability begins after a period of total disability, the period of total disability shall be deducted from the total period of compensation.

"D. In determining the amount which represents the reduced monthly earning capacity for the purposes of subsection C of this section, consideration shall be given, among other things, to any previous disability, the occupational history of the injured employee, the nature and extent of the physical disability, the type of work the injured employee is able to perform subsequent to the injury, any wages received for work performed subsequent to the injury and the age of the employee at the time of injury.

"E. In case there is a previous disability, as the loss of one eye, one hand, one foot or otherwise, the percentage of disability for a subsequent injury shall be determined by computing the percentage of the entire disability and deducting therefrom the percentage of the previous disability as it existed at the time of the subsequent injury."

█ If multiple scheduled injuries are received at the same time, the Commission must determine the effect of the entire dis-

ability, removing them from the schedule and measuring the extent of disability by the total effect upon earning capacity. Ossic v. Verde Central Mines, 46 Ariz. 176, 49 P.2d 396. If two scheduled injuries are received at different times, and the first hearing resulted in an award, the Commission is directed to determine the entire disability as it exists after the second injury, removing them from the schedule, the presumption being that the condition shown to have existed in the former proceedings at the time of the first scheduled injury continued until the time of the second injury; in the absence of evidence to rebut this presumption the Commission must determine compensation by measuring the extent of disability by the total effect on earning capacity. Hurley v. Industrial Commission, 83 Ariz. 178, 318 P.2d 357.

■ A.R.S. § 23–1044, subsec. E, in speaking of previous disability, does not require that such disability be the result of a prior industrial accident, either scheduled or unscheduled. McKinney v. Industrial Commission, 78 Ariz. 264, 278 P.2d 887. But, if the prior disability arose through other than a prior industrial accident the presumption of continuing disability would not exist, and the prior disability must be shown to have affected earning capacity of the claimant at the time of the subsequent injury. Goodyear Aircraft Corporation v. Industrial Commission, 89 Ariz. 114, 358 P.2d 715.

Therefore, the determination to be made by this court is whether there was sufficient evidence to reasonably support a finding by the Commission that the loss of the distal phalanx of his left index finger had not resulted in a loss of earning capacity disability existing at the time of injury.

■ We have held many times that the Commission will be upheld if its findings are reasonably supported by the evidence. Shroyer v. Industrial Commission, 98 Ariz. 388, 405 P.2d 875, rehearing denied 99 Ariz. 266, 408 P.2d 406; Russell v. Industrial Commission, 98 Ariz. 138, 402 P.2d 561.

The claimant testified on direct examination at the rehearing that he lost the portion of his left index finger while a child. He testified that even a right-handed ironworker needed his left hand in "bolting up" and "welding," and that the loss had slowed him down. He stated that he was unable to use the remaining portion of the finger; that the weather bothered it; that the finger got in the way and was tender, and couldn't be used to grip, but just hung loose. But, on cross-examination, he stated:

"Q   At any time has your earning capacity been impaired by your hand prior to the time that you hurt your leg in the accident?

"A   Yes.

"Q You have earned less because of your hand?

"A A lot of places I would.

"Q What is the average wage for an iron worker?

"A 4.80 an hour.

"Q How much were you earning, say, in the year or two prior to the accident?

"A Working in iron?

"Q Yes.

"A When I was working up there, got hurt, I was making Five something an hour.

"Q So your hand was not affecting your earning capacity then?

"A Yes, it would affect me on some things, but with my leg it slowed me down so I couldn't do it at all.

"Q But you didn't earn anything less because of your hand, you were making 5.40 an hour, and the average wage is 4.80 an hour?

"A No, they didn't cut my wages on account of it.

\*    \*    \*    \*    \*    \*

"Q Before the accident when you would go down to the union hall were you refused jobs because of your hand?

"A I've always had a steady job with them before I went down to the union hall."

Neal Rouhier testified, on direct examination for the claimant, that he and claimant had worked together as a team. He testified that he had observed claimant prior to injury to claimant's leg, performing various types of iron work and that claimant was a "good hand," diligent, able physically and mentally, strong, and one who never shirked his duties. He testified further that the claimant was a reliable teammate. In regard to claimant's work after the injury to the leg Rouhier testified.

"Q The day that Mr. Wollum worked, did you work together with him?

"A Yes.

"Q Did you observe him to have any difficulty in the performance of his work?

"A I did.

"Q What was that observation?

"A Well, he couldn't keep up with the rest of us, he was very slow.

"Q In doing what, sir?

"A In climbing up and down the steel, the rebar.

"Q Was he having any other difficulties besides that?

"A No, he just couldn't get up and down fast enough.

"Q Do you know why he was having that difficulty?

"A Yes.

"Q Why?

"A Well, it was his knee.

"Q How do you know that?

"A Because he said it was.

"Q Did you observe the knee?

"A Yes, I seen his knee.

"Q Did he show you the knee?

"A Not then."

No other evidence was adduced at the rehearing bearing upon the existence or lack of a previous disability on the part of claimant as a result of the loss of the distal phalanx of his left index finger.

Claimant relies upon McKinney v. Industrial Commission, supra, in which we held that the non-scheduled injury section, A.C.A. Supp.1954, § 56–957(e), now A.R.S. § 23–1044, subsec. E, supra, applied where an employee suffered a sprained left ankle as the result of an accident arising out of and in the course of his employment, the Commission having found permanent disability and having awarded compensation for a scheduled injury. When this employee was eight years old he had lost his right leg in a non-industrial accident. In reversing the Commission we said:

"* * * It is suggested that the prior loss of petitioner's right leg did not effect his earning power and there would be no percentage of disability to deduct from his present aggregate disability. It seems extremely unrealistic to say that a man whose sphere of employment is industrial labor has no loss of earning power by the loss of a leg, especially when subdivision (e) recognizes it as causing some disability. Under all the conditions it may be great or slight but there would be something, and that something must be determined by the commission from a consideration of all influencing factors." 78 Ariz. at 266, 278 P.2d at 888

In the case of Goodyear Aircraft Corporation v. Industrial Commission, supra, relied upon by the Commission, we affirmed an award of the Commission, holding an employee was not entitled to an award for unscheduled permanent partial disability for an injury causing a partial loss of hearing when there was evidence tending to show a previous hearing loss not occasioned by an injury. This had not resulted in a loss of earning capacity at the time of the subsequent injury. In Goodyear, supra, we said:

"As gleaned from the McKinney case, supra, we find that 'previous disability' as referred to in section 23–1044(E), A.R.S., refers to previous disability which affected earning capacity at the time of the subsequent injury. The entire consideration in the non-scheduled category is a loss of earning capacity consideration. We have held that:

" 'There is a distinction between a preexisting condition which is dormant

and not disabling at the time of the accident and is stimulated into disability by reason of the accident, and a pre-existing disability that is added to by a second disability. In the case at bar, claimant was performing his daily manual labor with no disabling effects from his pre-existing condition up to the time of the accident, but has been disabled since. At the time of the accident he had no disability. True, he had a condition, which was susceptible of becoming a disability when aggravated. Section 56–957, Arizona Code 1939 [now section 23–1044(E) A.R.S.], does not require the Commission to give effect to such a condition and attempt to apportion the concurring causes. That section only requires the Commission to take into consideration previous disability. That means an existing disability at the time of the injury—something that affects his earning power.' Lee Moor Contracting Co. v. Industrial Commission, 61 Ariz. 52, 143 P.2d 888, 890; Eagle Indemnity Co. v. Hadley, 70 Ariz. 179, 218 P.2d 488.

"There was no doubt in the McKinney Case that the prior loss of a leg had affected the employee's earning power. In the case at bar was there such a prior loss of earning power so as to make section 23–1044(E), A.R.S., applicable? The evidence warranted the commission's finding that there was no loss of earning capacity disability existing at the time of injury.

\*     \*     \*     \*     \*     \*

"Segobiano was performing his daily work with no disabling effects from his pre-existing loss of hearing up to the time of accident, and even after the accident he was still able to continue his regular work. He even admitted he was not aware of any pre-existing condition. This being so, we believe that The Industrial Commission was correct in awarding compensation under the scheduled section. There being no 'previous disability' which affected his earning capacity at the time of the subsequent injury section 23–1044(E), A.R.S., is inapplicable." 89 Ariz. at 118, 358 P.2d at 717.

In the McKinney case, supra, this court concluded that the loss of a leg was of such a nature that this alone was sufficient to show a loss of earning capacity. In the instant case, claimant testified that the loss of the finger tip affected his work, also that in many places he would have earned less because of his hand; however, there was no evidence to corroborate his statement, or in any way show that he had received less wages because of his hand, or that the loss of the finger tip affected his ability to retain employment or in any instance affected his hourly or yearly earnings, as an ironworker or in any other em-

ployment. There was no evidence that claimant was laid off first during slow times, nor that he had ever been fired from any position as an ironworker because of the missing finger tip.

The testimony of claimant's witness Rouhier was to the effect that claimant was able to do work well before the accident, and that it was the injury to his leg which affected his work after the second accident.

■ The object of determining the future earning capacity is to find "as near as possible whether in a competitive labor market the subject in his injured condition can probably sell his services and for how much." Shroyer v. Industrial Commission, supra.

We said, in Magma Copper Co. v. Industrial Commission, 96 Ariz. 341, 395 P.2d 616:

"It is fundamental that in review by certiorari in this type of proceeding, this Court does not weigh the testimony or resolve conflicts therein; it only searches the record to see whether the Commission's findings are reasonably supported by the evidence. McGill v. Industrial Commission, 82 Ariz. 36, 307 P.2d 1042 (1957)." 96 Ariz. at 344, 395 P.2d at 618.

■ It is the conclusion of this court that there was sufficient evidence from which the Commission could have reasonably found that at the time of the injury to his right leg the claimant was not suffering any loss of earning capacity due to the lack of a distal phalanx of his left index finger.

We therefore hold, there being sufficient evidence to support their findings, that the Commission did not err in affirming the previous finding and award of compensation for scheduled permanent disability.

Award affirmed.

BERNSTEIN, V. C. J., and UDALL and LOCKWOOD, JJ., concur.

STRUCKMEYER, Chief Justice (dissenting).

I am unable to concur in the disposition of this cause.

The loss of the distal phalange of the left index finger is a scheduled injury, A.R.S. § 23–1044, subsec. B, par. 6, as is the partial loss of the use of a leg, A.R.S. § 23–1044, subsec. B, par. 21. Under a long line of decisions of this Court, Woods v. Industrial Commission, 91 Ariz. 14, 368 P.2d 758; Hurley v. Industrial Commission, 83 Ariz. 178, 318 P.2d 357; Crowder v. Industrial Commission, 81 Ariz. 396, 307 P. 2d 104; Morris v. Industrial Commission, 81 Ariz. 68, 299 P.2d 652; McKinney v. Industrial Commission, 78 Ariz. 264, 278 P.2d 887, the construction of § 23–1044,

subsec. C, has been that the combination of two scheduled injuries, whether occurring at the same time or at different times, brings the claim within subsection C of § 23–1044.

Subsection C provides that in cases not enumerated in subsection B (scheduled disabilities) the employee shall receive compensation according to fifty-five (55) per cent of the difference between his average monthly wages before the accident and the amount which represents his reduced monthly earning capacity resulting from the disability.

By subsection E where there is a previous disability, as the loss or partial loss of use of one eye, one hand, one foot or otherwise, "the percentage of disability for a subsequent injury" (here, the partial loss of use of one leg) "shall be determined by computing the percentage of the entire disability and deducting therefrom the percentage of the previous disability as it existed at the time of the subsequent injury." The Industrial Commission treated Wollum's subsequent injury as a scheduled injury under subsection B and limited his compensation to seven and one-half months. In doing so, the Commission disregarded the plain language of subsection C, apparently following Goodyear Aircraft Corp. v. Industrial Commission, 89 Ariz. 114, 358 P.2d 715.

In 1961, in Goodyear, we interpreted McKinney v. Industrial Commission, supra, to mean that the previous disability referred to in subsection E "refers to previous disability which affected earning capacity at the time of the subsequent injury." This interpretation of McKinney cannot be supported by any of the language used therein. The holding in Goodyear adds a condition which the legislature did not make by limiting the previous disability to a disability which at the time of the subsequent injury affected the claimant's earning capacity.

I believe that the Court erred in its pronouncement in Goodyear. Courts exist for the purpose of applying the language of the statute as the legislature enacted it. They do not exist for the purpose of superimposing on legislative language conditions no matter how desirable they may seem to be.

There is here a previous disability recognized by the statute as a scheduled loss (loss of part of a finger). There was a further scheduled loss in the partial loss of use of the claimant's leg. While it may be that Wollum in his occupation as a steel worker did not have a loss of earning capacity as a result of the loss of the distal phalange of the left index finger, nevertheless the consequences of applying the construction of Goodyear in this case is to deny him a very substantial right. As an unscheduled permanent disability, if he were allowed the full benefit of the language of § 23–1044, subsec. C, without the

court-imposed restriction, he would "receive *during such disability* compensation equal to fifty-five per cent of the difference between his average monthly wages before the accident and the amount which represents his reduced monthly earning capacity resulting from the disability" (emphasis supplied). This Court should not, in the guise of judicial construction, usurp the powers entrusted to another branch of the government by Article III of the Constitution of Arizona, A.R.S.

For the foregoing reasons, I dissent.