488 P.2d 685

**William F. RODGERS, Petitioner,**

**v.**

**The INDUSTRIAL COMMISSION of Arizona, Respondent,**

**Allison Steel Manufacturing Company, Respondent Employer,**

**State Compensation Fund, Respondent Carrier.**

**No. 1 CA–IC 300.**

Court of Appeals of Arizona, Division 1, Department B.

Sept. 16, 1971.

Rehearing Denied Nov. 4, 1971.

Review Granted Dec. 21, 1971.

Gorey & Ely by Stephen S. Gorey, Phoenix, for petitioner.

William C. Wahl, Jr., Chief Counsel, Phoenix, for respondent, The Industrial Comm. of Ariz.

Snell & Wilmer by Burr Sutter, Phoenix, for respondent Allison Steel Manufacturing Co.

Robert K. Park, Chief Counsel by Harlan J. Crossman, Phoenix, for respondent carrier, State Compensation Fund.

HAIRE, Judge.

The question raised by the petitioner-claimant on this review of an award of the Industrial Commission concerns the Commission's failure to treat a second industrial injury to his right hand as an unscheduled injury.[1]

The claimant's first industrial injury consisted of the loss of two of the fingers and a portion of the palm of his right hand. This first injury resulted in a Commission award of scheduled benefits for a 45% functional loss of use of the right hand. In a subsequent industrial injury the claimant suffered a 20% functional loss of use of one of the remaining fingers of the same hand. This loss of use eventually resulted in a Commission finding that claimant had suffered a permanent partial disability equivalent to an additional 4% functional loss of use of the right hand

---

1. As used in this opinion, the term "unscheduled" refers to an injury which is compensated pursuant to the provisions of A.R.S. § 23-1044, subsec. C. The term "scheduled" refers to an injury for which compensation is provided pursuant to the schedule of benefits set forth in A.R.S. § 23-1044, subsec. B.

and a scheduled award was made for this additional loss of use pursuant to the provisions of A.R.S. § 23–1044, subsec. B, par. 21.

On this review claimant does not contend that the finding of an additional 4% functional loss of the use of the right hand is either factually or legally erroneous. Rather, claimant's sole contention is that this being a second successive "scheduled" injury, the Commission was required to treat it as "unscheduled" and thus award benefits in accordance with the claimant's factually determined actual loss of earning capacity instead of in accordance with the fixed schedule of benefits set forth in § 23–1044, subsec. B.

In support of the Commission's award, the respondents contend that prior Arizona Supreme Court decisions holding that the second successive scheduled injury must be treated as unscheduled are not applicable when the combined result of the first and second injuries produces a disability which is still encompassed within a *specifically* scheduled classification of § 23–1044, subsec. B. A consideration of these conflicting contentions requires a close examination of the reasons which led to the adoption by our Supreme Court of the successive and multiple scheduled injury doctrines.

The case which gave birth to the multiple scheduled injury doctrine is Ossic v. Verde Central Mines, 46 Ariz. 176, 49 P.2d 396 (1935). In that case, the workman had received several injuries in one accident, two of which were listed as scheduled injuries under the statutory predecessor of § 23–1044, subsec. B, and the balance of which were unscheduled. The Commission awarded compensation based upon adding together the two statutorily listed amounts for the scheduled injuries, and then adding thereto an amount for the permanent partial disability attributable to the other unscheduled injuries. On review of that award the petitioning workman contended that his compensation must be based upon the total loss of earning power caused by all of the injuries considered together, and not upon the total of the separate awards for each separate injury as scheduled in the statute. In considering this contention, Justice Alfred C. Lockwood reviewed the statute and noted that by setting forth specific combinations of scheduled injuries with fixed compensation for these combined injuries at a much greater amount than would be justified by adding the amounts provided for each injury if received separately, the legislature evidenced an awareness of the fact that when more than one scheduled injury has been received, the combined effect on earning capacity might well be greatly in excess of the total of the amounts fixed separately for scheduled injuries. As stated by the court:

> "These facts are evidence that the legislature has realized that in compensation cases two plus two does not necessarily equal four, but in some cases may equal six or more. We are of the opinion that this rule, which the legislature has specifically adopted for certain classes of multiple injuries, is in logic and in justice the one which should be applied to all cases of such injuries, *where another rule is not expressly set forth in the statute.* In other words, that when the legislature has scheduled several injuries to be compensated at a fixed rate when incurred separately, and several of such injuries are received at the same time, the commission must consider the total picture of all the injuries in computing the extent of the disability, rather than merely adding the amounts allowed for the several separate and distinct injuries." (Emphasis supplied). 46 Ariz. at 188–189, 49 P.2d at 401–402.

We are of the opinion that it is particularly important to note that the court limited its holding in Ossic to multiple scheduled injury situations "where another rule is not expressly set forth in the statute." This indicates an awareness by the court that if the combined disability resulting from the multiple injuries is a disability which is expressly scheduled in the statute,

then the scheduled amount for that resulting disability is the amount payable, notwithstanding the fact that the workman initially received multiple injuries.

Dictum in the Ossic decision also set the stage for the application of this same reasoning to the successive scheduled injury situation—that is, to a situation involving successive separate accidents, the second of which involved a disability which if considered separate and apart would constitute a scheduled disability. *See* McKinney v. Industrial Commission, 78 Ariz. 264, 278 P.2d 887 (1955); Morris v. Industrial Commission, 81 Ariz. 68, 299 P.2d 652 (1956); Hurley v. Industrial Commission, 83 Ariz. 178, 318 P.2d 357 (1957); Woods v. Industrial Commission, 91 Ariz. 14, 368 P.2d 758 (1962); Meador v. Industrial Commission, 2 Ariz.App. 382, 409 P.2d 302 (1966).

Unquestionably, when the combined effect of the successive injuries results in disabilities which do not come completely within one of the scheduled classifications, there is no way that the resulting disability can be classified as scheduled and still give meaning and effect to A.R.S. § 23–1044, subsec. E.[2] Therefore, in prior decisions the Arizona Supreme Court has given great weight to the provisions of § 23–1044, subsec. E as demonstrating that the second injury should not be treated as scheduled. However, where the result produced by the second injury is not outside the specific disabilities which are scheduled, the Arizona courts have not hesitated to find that the second injury may be clas-

sified as scheduled. Wollum v. Industrial Commission, 100 Ariz. 317, 414 P.2d 137 (1966); Hurley v. Industrial Commission, 12 Ariz.App. 162, 468 P.2d 613 (1970). Admittedly in both of these cases, the court held that the second injury must be treated as scheduled because there was no showing of residual disability from the first injury. However, the decisions are illustrative of the principle first enunciated in Ossic, *supra,* that it is the "combined effect" of the multiple or successive injuries which must control a determination as to whether a resulting disability is to be treated as scheduled or unscheduled.

In the recent decision of Arnott v. Industrial Commission, 103 Ariz. 182, 438 P.2d 419 (1968), the court emphasized that in determining whether an injury is scheduled or unscheduled, it is necessary to look to the place of residual impairment rather than to the place of injury. That is, it is not the injury which is determinative of whether the disability should be treated as scheduled or unscheduled, but rather the place where the resultant disability or loss of use manifests itself. In our opinion, it is not the fact that multiple injuries are received simultaneously or successively that is important. The important consideration is the residual effect of these injuries. If the residual effect of the multiple injuries is a disability which comes entirely within one of the statutorily scheduled classifications (whether that scheduled disability be of the single or combined type), then compensation must be awarded in accordance with the amount allotted in

---

2. A.R.S. § 23–1044, subsec. E reads as follows:

"E. In case there is a previous disability, as the loss of one eye, one hand, one foot or otherwise, the percentage of disability for a subsequent injury shall be determined by computing the percentage of the entire disability and deducting therefrom the percentage of the previous disability as it existed at the time of the subsequent injury."

The Court in Ossic, *supra,* in discussing this provision stated as follows:

"By the terms of this provision, if two scheduled injuries are received at dif-

ferent times, the commission is directed to determine the entire disability as it exists after the second injury, and in apportioning the compensation for which the last employer is responsible, to deduct the percentage of the first disability from the total disability as it existed after the subsequent injuries. If the complete effect is the test when the injuries are received separately, we see no reason why it should not be the same when they are received simultaneously." 46 Ariz. at 189, 49 P.2d at 402.

the schedule. If the residual effect does not come entirely within one of the scheduled classifications, then an award must be made in accordance with the actual loss of earning capacity as determined in accordance with the provisions of A.R.S. § 23–1044, subsec. C.

Where the total residual effect comes entirely within one of the scheduled classifications of § 23–1044, subsec. B, no difficulty is encountered in applying the provisions of § 23–1044, subsec. E. The percentage of the entire disability within the scheduled classification may be determined by appropriate medical evidence. Likewise, the percentage of the prior disability as it existed at the time of the second injury can be ascertained. If there is no evidence on this latter point, and the prior injury was industrial in nature, there is a presumption that the prior disability continued to exist at the time of the second injury. Hurley v. Industrial Commission, 83 Ariz. 178, 318 P.2d 357 (1957); Wollum, *supra.*

In the case under consideration, there were successive injuries, both to the right hand. The first injury caused a 45% residual impairment of the right hand and the second one caused an additional 4% residual impairment of the right hand. The affected extremity is solely the right hand which is a scheduled disability under A.R. S. § 23–1044, subsec. B. We hold that the Commission correctly awarded compensation for this additional disability as a scheduled injury. Any other holding would lead to the absurd result that a claimant suffering these injuries simultaneously in a single accident would receive benefits for a certain period of time and no more, whereas in the successive accident situation with the same injuries the claimant could receive lifetime benefits even though his total disability was the same as that suffered by the claimant in the single accident situation. We find

nothing in the statutes which requires such a result.

The award is affirmed.

JACOBSON, P. J., and EUBANK, J., concur.