493 P.2d 501

Jesse D. **SUTTON**, Petitioner,

v.

The **INDUSTRIAL COMMISSION** of
Arizona, Respondent,

Consolidated Copperstate Lines, Respond-
ent Employer,

Transport Indemnity Company, Respond-
ent Carrier.

**No. 1 CA–IC 627.**

Court of Appeals of Arizona,
Division 1,
Department B.

Feb. 7, 1972.

Rehearing Denied March 9, 1972.

Review Denied May 9, 1972.

Morgan & Jerome by Donald J. Morgan, Phoenix, for petitioner.

Twitty, Sievwright & Mills by John F. Mills, Phoenix, for respondent carrier.

William C. Wahl, Jr., Chief Counsel, Industrial Comm. of Ariz., Phoenix, for respondent.

Robert K. Park, Chief Counsel, State Compensation Fund, Phoenix.

JACOBSON, Judge.

The single question before this court is whether a prior nonindustrial injury resulted in a loss of earning capacity at the time of a subsequent scheduled industrial injury which would then convert that injury into the unscheduled class.

Petitioner was employed as a carloader prior to serving in the Marine Corps during World War II. As a result of his wartime duties, petitioner suffered a 60 percent loss of hearing for which he is presently being compensated by the federal government at the rate of $162 per month.

Upon being discharged from the service in 1945, petitioner returned to his former occupation of loading railroad cars. In 1951, petitioner went to work for a trucking company as a dockworker and remained in that capacity for approximately three years. Thereafter, he obtained a job as a truck driver with the same employer, a job which he held for six or seven years.

In 1961, petitioner returned to his former occupation as a dockworker, contending that this was due to his prior service-connected disability which precluded him from passing an ICC physical examination to drive in interstate commerce.

Petitioner continued working as a dockworker until 1969 when he was forced to leave his employer because of an arm injury sustained in the course of his employment. As to this latter injury, the Commission issued a scheduled award, granting petitioner a ten percent functional loss of the left arm.

On this appeal, petitioner contends that his arm injury should be classified as an unscheduled injury under A.R.S. § 23–1044, subsec. E because of his prior service connected hearing disability.

In the recent Supreme Court decision of Ronquillo v. Industrial Commission, 107 Ariz. 542, 490 P.2d 423 (1971), the court in discussing the prior non-industrial injury, stated:

" . . . there is a presumption that the prior injury had an effect on the earning capacity of the workman at the time of the second injury although this presumption can be overcome . . .."

If this presumption is not rebutted, the Commission must treat the subsequent industrial injury as unscheduled in accordance with A.R.S. § 23–1044, subsec. E, Ronquillo, supra.

We note initially that this matter was presented to the hearing officer and the Commission in a pre-Ronquillo setting, that is, all parties presumed that the petitioner had the burden of proving that his prior non-industrial injury affected his earning capacity. See, Wollum v. Industrial Commission, 100 Ariz. 317, 414 P.2d 137 (1966). Therefore respondents presented no affirmative witnesses or evidence as to the amount of wages received by the petitioner from his employment immediately prior to his service in the armed services or the amount of wages received from this same employment following discharge. Likewise, no evidence was received as to the actual amount of wages received by petitioner from his employment as a truck driver as compared to either his prior dockworker wages or his subsequent dockworker wages. Nor was any evidence received as to whether petitioner could, immediately prior to his second injury, have retained his employment as a truck driver excluding his hearing disability. These omissions in the record are not to be considered as a criticism of respondent's counsel, for he had no way of knowing that the burden of presenting this type of evidence would be changed so as to be his, rather than the petitioner's. The paucity of the evidence is pointed out merely to indicate to the Commission matters which may have materiality in future hearings in view of the conclusions reached by this court in this matter.

Following the dictum in Ronquillo, supra, that a prior non-industrially related injury is presumed to affect earning capacity, the court is confronted in this case with the initial question of how long may such a presumption exist. In this case, a period of at least 24 years has elapsed between petitioner's non-industrial injury and his industrial injury. During that period of time, petitioner was gainfully employed in various occupations, primarily centering around the freight industry—the same general type of work he was engaged in prior to his loss of hearing.

Ronquillo would seem to indicate that the presumption lasts forever. See also, McKinney v. Industrial Commission, 78 Ariz. 264, 278 P.2d 887 (1955) (loss of leg at age 8—industrial accident at age 46). We therefore hold that the rebuttable presumption of loss of earning capacity

arising from a non-industrial injury is a continuing one.

The next question presented by the facts in this case, and by this rebuttable presumption is what is necessary to rebut the presumption?. In this case it is undisputed that prior to entering the service, petitioner was employed as a produce packer. Following the occurrence of his hearing disability and his discharge from the service, he returned to this exact employment.

■ Normally, the fact that an injured workman is able to carry on the same type of occupation subsequent to his injury as he did prior to his injury, is indicative that he has suffered no loss of earning capacity. Maness v. Industrial Commission, 102 Ariz. 557, 434 P.2d 643 (1967); Allen v. Industrial Commission, 87 Ariz. 56, 347 P. 2d 710 (1959); Turley v. Industrial Commission, 10 Ariz.App. 21, 455 P.2d 470 (1969).

Therefore, in this case, if we had nothing more than the sequence of employment, injury, and return to same employment without evidence that the return to employment was inspired by sympathy, we would not hesitate to hold that the presumption of loss of earning capacity arising from the prior non-industrial injury had been rebutted. However, in this case, we have evidence, sketchy though it may be, that petitioner was unable to retain a more lucrative employment as a truck driver because of his prior non-industrial injury. Thus, there is some evidence that petitioner's hearing defect may have affected his *potential* earning capacity. Are we then concerned with *actual* earning capacity or are we concerned with *potential* earning capacity? We think the latter. *See*, Gibson v. Industrial Commission, 68 Ariz. 313, 205 P.2d 588 (1949); Davis v. Industrial Commission, 82 Ariz. 173, 309 P.2d 793 (1957) (the Davis court speaks in terms of "future earning capacity"); Magma Cop-

per Co. v. Industrial Commission, 96 Ariz. 341, 395 P.2d 616 (1964).

■ The Commission was thus faced with a factual determination as to whether petitioner's work record and earnings therefrom rebutted the continuing presumption of loss of earning capacity coupled with the evidence that petitioner's prior service-connected disability may have affected his potential earning capacity. From the record it appears that this factual determination was not made, and for this reason, the award must be set aside.

■ For guidance of the Commission in future hearings in this matter, we touch on a third factor presented by the respondent carrier in this case; that is, that petitioner is receiving from the federal government compensation for his hearing loss. To put the matter in focus, the question to be answered is: If a workman is receiving compensation for a prior non-industrial injury, does that compensation compensate him for his presumed loss of earning capacity so that as a matter of law he has no loss of earning capacity at the time of the second industrial injury? We think not. The fact that a claimant is receiving compensation from an outside source for a prior disability is, in our opinion, immaterial to the issue of whether or not that disability does in fact exist and is causing a loss of earning capacity. For the purpose of determining whether petitioner's industrial injury should be treated in the unscheduled category, we hold that compensation being paid to petitioner is immaterial to this issue. We decline at this time to determine whether such compensation may be material in determining the amount of the award should the Commission hold that petitioner's industrial injury is unscheduled.

Award set aside.

HAIRE and EUBANK, JJ., concur.