506 P.2d 285

Cecil BLOUNT, Petitioner,

v.

The INDUSTRIAL COMMISSION of Arizona, Respondent,

Safford Valley Cotton Growers Co-op, Respondent Employer,

State Compensation Fund, Respondent Carrier.

No. 1 CA–IC 655.

Court of Appeals of Arizona, Division 1, Department B.

Feb. 20, 1973.

Rehearing Denied March 7, 1973.

Review Denied April 17, 1973.

Gilbert Gonzalez, Tucson, for petitioner.

William C. Wahl, Jr., Chief Counsel, Phoenix, for respondent The Industrial Comm. of Ariz.

Robert K. Park, Chief Counsel, State Compensation Fund, by J. Victor Stoffa, Phoenix, for respondents employer and carrier.

HAIRE, Judge.

On this review by certiorari of an award entered by the Industrial Commission, the petitioner contends that he should have received an award for *unscheduled* permanent partial disability instead of the *scheduled* award which was entered by the Commission.[1]

On January 1, 1960, when petitioner was 50 years of age, he sustained an industrial injury to his left arm, which resulted in a findings and award for scheduled permanent disability issued February 11, 1964. This award found that the petitioner had sustained a permanent partial disability "equal to $17\frac{1}{2}\%$ loss of function of the left (minor) arm". This award of February 11, 1964 became final, and is not questioned on this review. Subsequent to February 11, 1964, the petitioner developed additional problems resulting from the 1960 injury to his left arm. He filed a petition to reopen with the Commission, and on October 16, 1968 the Commission issued an award reopening petitioner's claim as of August

---

1. As used in this opinion, the term "unscheduled" refers to an injury which is compensated pursuant to the provisions of A.R.S. § 23–1044, subsection C. The term "scheduled" refers to an injury for which compensation is provided pursuant to the schedule of benefits set forth in A.R.S. § 23–1044, subsection B.

29, 1968, for "new, additional or previously undiscovered disability". This reopening culminated in an award issued May 6, 1971 for scheduled permanent disability. It is unquestioned that the "new, additional or previously undiscovered disability" covered by the reopening award was causally related to the 1960 injury, and resulted in the amputation of petitioner's left forearm. On making the May 6, 1971 award, the Commission found "a permanent partial disability equal to 100% loss by amputation of the left (minor) arm" and entered the appropriate scheduled award.

On this review, petitioner contends that he should have received an unscheduled disability award for the sole reason that *at the time of the amputation* he was allegedly suffering from a completely unrelated disabling arthritic condition. Apart from the fact that there is evidence in the record which would support a finding that the petitioner was not suffering from any disabling arthritic condition at the time of the amputation, there are obvious legal impediments to petitioner's contention. Petitioner does not contend, nor would the evidence support a finding, that he was suffering from any disability due to arthritis prior to or at the time of his injury on January 1, 1960. Further, he does not contend, nor again would the evidence support a finding, that his alleged disabling arthritic condition was in any way causally related to his industrial injury. His sole contention is that the arthritic condition complained of was in existence on October 6, 1969 (some 9¾ years after he suffered his industrial injury), the date of the amputation of his left arm.

 In Rodgers v. Industrial Commission, 15 Ariz.App. 329, 488 P.2d 685 (1971) we reviewed the Arizona decisions pertaining to "multiple" or "successive" scheduled injuries and the circumstances under which an injury which would normally be "scheduled" might be converted to "unscheduled". *See also* Ronquillo v. Industrial Commission, 107 Ariz. 542, 490 P.2d 423 (1971). We can find no support in any of the Arizona decisions or statutes for petitioner's position. In considering A.R.S. § 23–1044, subsec. E,[2] the language "at the time of the subsequent injury" refers to the time the subsequent injury was received, and not to the time the injury or disabling condition became stationary as contended by petitioner, so as to require compensation for completely unrelated disabilities which might develop after the injury was received.

The award of the Commission is affirmed.

JACOBSON, C. J., Division 1, and EUBANK, P. J., concur.

---

2. A.R.S. § 23–1044, subsec. E reads as follows:

"E. In case there is a previous disability, as the loss of one eye, one hand, one foot or otherwise, the percentage of disability for a subsequent injury shall be determined by computing the percentage of the entire disability and deducting therefrom the percentage of the previous disability as it existed at the time of the subsequent injury."