513 P.2d 679

William M. BOZMAN, Petitioner,

v.

The **INDUSTRIAL COMMISSION** of Arizona, Respondent,
Equipment Sales Company, Respondent Employer,
State Compensation Fund, Respondent Carrier.

No. I CA–IC 760.

Court of Appeals of Arizona,
Division 1,
Department B.

Sept. 6, 1973.

Rehearing Denied Oct. 22, 1973.

Review Denied Nov. 13, 1973.

Jennings, Strouss & Salmon, by Ronald H. Moore, Phoenix, for petitioner.

William C. Wahl, Jr., Chief Counsel, The Industrial Commission of Arizona, Phoenix, for respondent.

Robert K. Park, Chief Counsel, State Compensation Fund, by Ronald M. Meitz, Machmer, Schlosser & Meitz, Ltd., Phoenix, for respondent Carrier.

## OPINION

HAIRE, Judge.

On this review of an award entered by the Industrial Commission in a workmen's compensation proceeding, we are required to determine whether a preexisting visual impairment requires a reduction in the scheduled award otherwise payable to a claimant who loses an eye by enucleation as a result of an industrial injury.

Some 45 years prior to the industrial injury in question, the claimant suffered a non-industrial injury which left him functionally blind in his left eye.[1] The facts show that this preexisting visual loss had not decreased the claimant's earning ability, and thus did not constitute a loss of earning capacity disability at the time of the subsequent industrial injury. Based upon these facts, the claimant contends that he is entitled to the full scheduled award for the loss of an eye by enucleation, while the respondent insurance carrier contends that because of the preexisting loss of sight, claimant is entitled to receive only the difference between the 30 months compensation scheduled for loss of an eye by enucleation, and the 25 months scheduled for the complete loss of sight in one eye without enucleation.

The Commission adopted the carrier's contention, and awarded the claimant five months permanent partial disability compensation as a scheduled award. The claimant has brought that award before this Court for review.

The pertinent statutory provisions found in A.R.S. § 23–1044, are as follows:

"B. Disability shall be deemed permanent partial disability if caused by any of the following specified injuries, and compensation of fifty-five per cent of the average monthly wage of the injured employee, in addition to the compensation for temporary total disability, shall be paid for the period given in the following schedule:

\* \* \* \* \* \*

"16. For the loss of an eye by enucleation, thirty months.

"17. For the permanent and complete loss of sight in one eye without enucleation, twenty-five months.

\* \* \* \* \* \*

"E. In case there is a previous disability, as the loss of one eye, one hand, one foot or otherwise, the percentage of disability for a subsequent injury shall be determined by computing the percentage of the entire disability and deducting therefrom the percentage of the previous disability as it existed at the time of the subsequent injury."

---

1. Contrary to claimant's contentions, we find that the record overwhelmingly supports the hearing officer's finding that prior to the industrial injury in question, claimant had a "total loss of functional use of left eye . . . notwithstanding the fact he may have had some minimal peripheral vision."

The respondent-carrier contends that the above-quoted subsection E of A.R.S. § 23–1044 is applicable to the facts of this case and allows the Commission to deduct the preexisting loss of sight in entering an award for claimant's industrial injury. While the literal language of subsection E would appear to give some support to the carrier's contentions, we are convinced that prior Arizona decisions construing this statutory provision, particularly insofar as it applies to scheduled awards, require a contrary result.

There have been many Arizona decisions dealing with the applicability of § 23–1044, subsec. E to multiple or successive scheduled injury situations, beginning with the 1935 decision, Ossic v. Verde Central Mines, 46 Ariz. 176, 49 P.2d 396 (1935), and including the relatively recent decisions rendered by the Arizona Supreme Court in Ronquillo v. Industrial Commission, 107 Ariz. 542, 490 P.2d 423 (1971) and Rodgers v. Industrial Commission, 109 Ariz. 216, 508 P.2d 46 (1973). Without going into an exhaustive analysis of the many cases involved, suffice it to say that insofar as concerns successive injury situations, the "previous disability" referred to in A.R.S. § 23–1044, subsec. E must be shown to have affected the earning capacity of the claimant at the time of the subsequent injury before any apportionment might be made. Wollum v. Industrial Commission, 100 Ariz. 317, 414 P.2d 137 (1966); Goodyear Aircraft Corporation v. Industrial Commission, 89 Ariz. 114, 358 P.2d 715 (1961). Here, claimant's prior injury would have been a scheduled injury under Arizona law if it had been incurred in an industrial setting, and therefore, under the principles set forth in Ronquillo, *supra,* there would be a rebuttable presumption that the prior injury continued to have an effect on claimant's earning capacity at the time of the second injury. The evidence presented at the hearing made this presumption inapplicable, and the hearing officer expressly, and in our opinion properly, found that the preexist-ing visual impairment did not constitute an earning capacity disability at the time of the second injury. Therefore, the apportionment provisions of A.R.S. § 23–1044, subsec. E are not applicable and cannot furnish any support for deducting the scheduled allowance for the prior visual impairment from the scheduled award for the loss of an eye by enucleation. Even if § 23–1044, subsec. E were considered applicable, the proper procedure would not involve the entry of the balance of a *scheduled* award for enucleation after deducting the scheduled compensation for the prior visual impairment. Under the principles stated in all of the Arizona decisions previously cited in this opinion, the finding of an earning capacity disability resulting from a prior injury which continues to exist at the time of the second injury, precludes the entry of a *scheduled award* for the second injury. In other words, under such circumstances the award for the second injury must be unscheduled and made pursuant to A.R.S. § 23–1044, subsecs. C and D, based upon the claimant's factually determined earning capacity disability, rather than upon the conclusively presumed earning capacity disability made applicable by statute to scheduled injuries. If the circumstances were such that A.R.S. § 23–1044, subsec. E became applicable, it would require that the percentage of the first disability be deducted from the factually determined percentage of the entire disability as it existed after the second injury, resulting finally in the entry of an *unscheduled* loss of earning capacity award for the difference. And it would not matter that the combined effect of the successive injuries might result in a total disability completely within one of the scheduled classifications —here A.R.S. § 23–1044, subsec. B(16). Under the Arizona Supreme Court's decision in Rodgers, *supra,* an unscheduled award would still be required. In any event, here the evidence clearly supports the hearing officer's determination that the prior visual impairment did not constitute an earning capacity disability at the time of the second injury. Therefore, § 23–

1044, subsec. E is inapplicable, and the claimant is entitled to the entry of a scheduled award.

Apart from the language of § 23-1044, subsec. E, the carrier points to no statutory provision which would justify the five months scheduled award entered by the Commission, and we have found none. Questions concerning the amount of compensation payable for the loss of already impaired physical organs have arisen under the workmen's compensation statutes of several other jurisdictions, and because of the statutory variations, the results have not always been entirely consistent. *See* 2 A. Larson, Workmen's Compensation Law, §§ 58.10, 59.20 at 88.44, 88.110 (1970). In Gentry v. Bano, Inc., 91 Idaho 790, 430 P. 2d 681 (1967), in a fact situation practically identical to that here involved, the court reasoned that the Idaho statutes provide for two distinct eye injuries—one the impairment of vision, and the other the loss of a physical organ. It then held that the claimant was entitled to the full award provided for the loss of a physical organ, the eye, notwithstanding his prior blindness in that eye. In Farley v. Martin Mechanical Corp., 31 A.D.2d 285, 297 N.Y.S.2d 359 (1969), aff'd., 26 N.Y.2d 635, 307 N.Y.S.2d 471, 255 N.E.2d 726 (1970), the court based its decision in part on the same reasoning as that adopted by the Idaho court, and further stated:

"In Matter of Riegle v. Fordon [273 App.Div. 213, 76 N.Y.S.2d 523] (*supra*), the claimant injured his right eye which was totally blind, which injury resulted in enucleation of the eye. He received a schedule award for 100% loss of the right eye as a member, which was affirmed by this court stating:

'It is conceded that claimant's right eye was totally blind before the accident. Appellants assert on the basis of this fact that the award was improper and should have been limited to facial disfigurement; in other words, that since the eye was not a useful member no award could be made for its loss as a member.

'The statute makes no such distinction. Workmen's Compensation Law, § 15, subd. 3. *If the word "useful" is to be interpolated it should be done by the Legislature.* Moreover, there are other considerations beside disfigurement. Doubtless most people would prefer to retain and not lose a natural eye even though the eye may be sightless. An artificial eye may well produce discomfort and irritations. And beyond this there usually remains with the average person the hope that the advancement of medical science may provide a way for restoration of sight. *These considerations should not be ignored by judicial interpolation'*" Farley v. Martin Mechanical Corp., *supra,* 297 N.Y.S.2d at 361. (Emphasis added.)

For a contrary result, *see* D'Amico Macaroni Co. v. Industrial Commission, 44 Ill. 2d 519, 256 N.E.2d 9 (1970). However, the result in the D'Amico decision was based upon the language of the Illinois apportionment statute, and as we have previously shown, the Arizona apportionment statute is inapplicable where the prior physical impairment has not resulted in an earning capacity disability.

■ ■ Based upon the foregoing, it is our opinion that the award must be set aside. Contrary to the carrier's contentions, the result we reach is not contrary to the basic tenets of workmen's compensation legislation, but rather is in accord with the principle that compensation should be paid in accordance with the loss of earning capacity and not measured by the physical injury involved. Scheduled injury statutes depart from this principle somewhat in that a specific loss of earning capacity is conclusively presumed from the showing of certain physical injuries. 2 A. Larson, Workmen's Compensation Laws, § 58.10, at 88.42 (1970). *See* Williams v. Industrial Commission, 73 Ariz. 57, 234 P.2d 471 (1951); Scott v. Industrial Commission, 11 Ariz.App. 20, 461 P.2d 499 (1969). Given this statutorily presumed loss of earning capacity resulting from the physi-

cal impairment, it is entirely logical that any departure from the statutorily scheduled compensation can be justified only by a showing that the prior physical impairment has in fact affected the claimant's earning capacity. If such is shown, then under our prior decisions the apportionment statute comes into play, and the loss of earning capacity existing at the time of the subsequent injury is to be considered in determining the carrier's compensation responsibility for that subsequent injury. Here, the apportionment statute does not come into play because the prior physical impairment had not in fact decreased the claimant's earning capacity at the time of the subsequent injury. Therefore, we hold that the claimant was entitled to the full statutorily scheduled award for the industrial injury which he incurred—the loss of an eye by enucleation.

The award is set aside.

JACOBSON, C. J., Division 1, and DONOFRIO, J., concur.