578 P.2d 184

Oris E. **ALSBROOKS**, Petitioner,

v.

The **INDUSTRIAL COMMISSION** of
Arizona, Respondent,

**J. F. Shea Company, Inc.**, Respondent
Employer,

**Argonaut Insurance Company,**
Respondent Carrier.

No. 1 CA–IC 1453.

Court of Appeals of Arizona,
Division 1,
Department C.

March 8, 1977.

Hocker & Gilcrease, Ltd. by R. Kelly
Hocker, Tempe, for petitioner.

John H. Budd, Jr., Chief Counsel, Phoe-
nix, for respondent The Industrial Commis-
sion of Arizona.

Jennings, Strauss & Salmon by Ronald H.
Moore, Phoenix, for respondent Employer
and respondent Carrier.

## OPINION

HAIRE, Judge.

On this review of an award by the re-
spondent Commission in a workmen's com-
pensation proceeding, the petitioner con-
tends that the Commission's hearing officer
erred in entering a "scheduled" award pur-
suant to A.R.S. § 23–1044 B. His specific
contention is that the industrially-caused
permanent partial disability of his left knee,
considered in conjunction with his prior dis-
abilities, should have resulted in an unsche-
duled award in accordance with the succes-
sive injury doctrine developed by case law
interpretation of the provisions of A.R.S.
§ 23–1044 E.

Prior to the industrial injury to his left
knee, petitioner had suffered two non-in-
dustrial injuries. Both of these prior inju-
ries were service connected and occurred
during World War II, one involving a
shrapnel wound to the right knee, and the
other a low back injury. These injuries
resulted in petitioner's being discharged
from the service with a 50% service-con-
nected permanent disability award.[1] There
is no question but that permanent *physical*
disability resulted from both of these ser-
vice-connected injuries. Whether they had
an adverse effect on petitioner's earning
capacity was the point in dispute at the
hearing.

At the time of the presentation of evi-
dence at the hearing before the Commis-
sion's hearing officer, both parties were
proceeding under the then well-established

1. This 50% disability award was later reduced
to 40%, but thereafter was again increased and
now remains at 50% following an operation on
petitioner's back.

case law interpretation that, when considered for the purpose of determining whether a later scheduled injury should be considered as unscheduled, the words "previous disability" in A.R.S. § 23–1044 E [2] meant an *earning capacity* disability. *Ronquillo v. Industrial Commission*, 107 Ariz. 542, 490 P.2d 423 (1971); *Wollum v. Industrial Commission*, 100 Ariz. 317, 414 P.2d 137 (1966); *Goodyear Aircraft Corporation v. Industrial Commission*, 89 Ariz. 114, 358 P.2d 715 (1961); *McKinney v. Industrial Commission*, 78 Ariz. 264, 278 P.2d 887 (1955); *Ross v. Industrial Commission*, 22 Ariz.App. 209, 526 P.2d 416 (1974) [3]; *Morgan v. Industrial Commission*, 21 Ariz.App. 526, 521 P.2d 157 (1974); *Yanez v. Industrial Commission*, 21 Ariz.App. 367, 519 P.2d 220 (1974); *Yount v. Industrial Commission*, 20 Ariz.App. 527, 514 P.2d 280 (1973); *Stine v. Industrial Commission*, 20 Ariz.App. 465, 513 P.2d 1348 (1973); *Bozman v. Industrial Commission*, 20 Ariz.App. 390, 513 P.2d 679 (1973); *Camacho v. Industrial Commission*, 20 Ariz.App. 225, 511 P.2d 669 (1973); *Wakley v. Industrial Commission*, 19 Ariz.App. 331, 507 P.2d 133 (1973); *Hollywood Continental Films v. Industrial Commission*, 19 Ariz.App. 234, 506 P.2d 274 (1973); *Gallardo v. Industrial Commission*, 16 Ariz.App. 491, 494 P.2d 391 (1972); *Sutton v. Industrial Commission*, 16 Ariz.App. 334, 493 P.2d 501 (1972); and *Duron v. Industrial Commission*, 16 Ariz.App. 71, 491 P.2d 21 (1971).

In the *Ronquillo* case, *supra*, the Arizona Supreme Court had considered the problems of proving the effect of a prior physical impairment on the petitioner's earning capacity for purposes of establishing the § 23–1044 E "previous disability", and had enunciated certain presumptions:

1. Conclusive presumption. If the previous disability resulted from a scheduled industrial injury, it would be conclu-

sively presumed that the previous disability had a continuing and permanent effect on the claimant's earning capacity. Therefore any subsequent scheduled industrial injury would, by reason of A.R.S. § 23–1044 E, automatically be treated as unscheduled.

2. Rebuttable presumption. If the previous disability resulted from a nonindustrial injury which would have been scheduled had it been industrially related, then there would be a rebuttable presumption that the prior injury had an effect on the earning capacity of the workman at the time of the second injury. This rebuttable presumption could be overcome by evidence showing that in fact the previous disability had not decreased claimant's earning capacity at the time of the subsequent injury.

At the hearing petitioner relied upon the *Ronquillo* rebuttable presumption, contending that the World War II injury to his right knee would have been scheduled, if industrial. In response to this contention, the respondent carrier advanced a two-pronged argument: First, that the combination of the World War II knee and low back injuries would have made the prior non-industrial injuries unscheduled, rather than scheduled, and therefore petitioner should not be able to claim the benefit of the *Ronquillo* rebuttable presumption; and, second, that even if a rebuttable presumption were available to petitioner, the evidence relating to petitioner's earning capacity prior to and at the time of the subsequent industrial injury was sufficient to rebut any such presumption.

The findings made by the hearing officer in his Decision Upon Hearing and Findings and Award were to the effect that petitioner's service-connected injuries would not

---

2. A.R.S. § 23–1044 E reads as follows:

"E. In case there is a previous disability, as the loss of one eye, one hand, one foot or otherwise, the percentage of disability for a subsequent injury shall be determined by computing the percentage of the entire disability and deducting therefrom the percentage of the previous disability as it existed at the time of the subsequent injury."

3. As later discussed, this *Ross* opinion was vacated by the Arizona Supreme Court, *see Ross v. Industrial Commission*, 112 Ariz. 253, 540 P.2d 1234 (1975), which was filed after the hearing officer made his decision in the instant case.

have been scheduled if industrial; that petitioner was not entitled to the benefit of any *Ronquillo* presumption; that the evidence did not establish that he was suffering from an earning capacity disability at the time of the industrial injury; and that therefore he was not entitled to an unscheduled award.

On the day following the issuance of the hearing officer's Decision Upon Hearing and Findings and Award, the Arizona Supreme Court filed its opinion in *Ross v. Industrial Commission*, 112 Ariz. 253, 540 P.2d 1234 (1975), vacating this Court's previously filed opinion, *Ross v. Industrial Commission*, 22 Ariz.App. 209, 526 P.2d 416 (1974). In this Court's filed opinion in *Ross*, we had discussed, by way of background, certain principles concerning A.R.S. § 23–1044 E, none of which were questioned by the parties in their briefs filed in this Court. That discussion was as follows:

"It is well established in Arizona law that when a prior injury has resulted in an earning capacity disability which exists at the time of the occurrence of a subsequent industrial injury, the industrial injury must be treated as unscheduled. The development of this 'successive' injury theory under A.R.S. § 23–1044 E and an analysis of pertinent Arizona decisions are set forth in our opinion in *Rodgers v. Industrial Commission*, 15 Ariz.App. 329, 488 P.2d 685 (1971) (vacated 109 Ariz. 216, 508 P.2d 46 (1973)) and will not be repeated here. However, the following principles pertinent to the issues raised by petitioner must be kept in mind. First, the 'previous disability' referred to in § 23–1044 E must be a disability which has resulted in a loss of earning capacity. *Goodyear Aircraft Corporation v. Industrial Commission*, 89 Ariz. 114, 358 P.2d 715 (1961); *McKinney v. Industrial Commission*, 78 Ariz. 264, 278 P.2d 887 (1955); *Bozman v. Industrial Commission*, 20 Ariz.App. 390, 513 P.2d 679 (1973); *Duron v. Industrial Commission*, 16 Ariz.App. 71, 491 P.2d 21 (1973). Second, this prior injury earning capacity disability must have been in existence *at the time of the occurrence* of the second injury. *Blount v. Industrial Commission*, 19 Ariz.App.

245, 506 P.2d 285 (1973); *Bozman, supra*. In the language of the statute, it is the 'previous disability as it existed at the time of the subsequent injury' which is pertinent. Third, if the prior injury was a *scheduled* industrial injury, then under Arizona decisional law there is a conclusive presumption that the prior injury not only caused an earning capacity disability, but also that the earning capacity disability continued and was in existence at the time of the subsequent injury. *Ronquillo v. Industrial Commission*, 107 Ariz. 542, 490 P.2d 423 (1971). On the other hand, if the prior injury was non-industrial, but would have been scheduled had it been industrial, then the same presumption applies initially, but it is not conclusive and may be rebutted by evidence showing no earning capacity loss. *Ronquillo, supra; Camacho v. Industrial Commission*, 20 Ariz.App. 225, 511 P.2d 669 (1973); *Sutton v. Industrial Commission*, 16 Ariz.App. 334, 493 P.2d 501 (1972). (Footnote omitted). (Emphasis in original). 22 Ariz.App. at 212, 526 P.2d at 419.

The *Ross* case was concerned with a welder who had lost the sight of one eye in a non-industrial accident, which would have created a rebuttable presumption of a loss of earning capacity. The carrier presented evidence that his earning capacity as a welder had not, however, been affected by the loss of sight in the one eye at the time of the industrial injury in which he lost his remaining eye. We then proceeded to discuss the contention raised on review by the petitioner in *Ross* in terms of the *Ronquillo* decision, that is, whether the evidence relating to petitioner's earning capacity at the time of the injury was sufficient to rebut the *Ronquillo* rebuttable presumption, and thus furnish support for the hearing officer's finding that *Ross'* prior injury had not resulted in an earning capacity disability at the time of the subsequent industrial injury. We determined that the record furnished support for the hearing officer's finding, and therefore affirmed the award. The Arizona Supreme Court granted review

of this Court's decision in *Ross*, vacated this Court's opinion, and set aside the hearing officer's award. The Arizona Supreme Court did not indicate in its opinion that it disagreed with this Court's interpretation of the facts, but rather, held that the "previous disability" language of A.R.S. § 23–1044 E did not require the showing of a reduced earning capacity, stating:

"As can be seen, all the cases not enumerated in subsection B (schedule awards) must be compensated pursuant to the provisions of subsections C, D and F, with an amount which represents the employee's reduced monthly earning capacity except those cases enumerated under subsection E, quoted supra. Subsection E does not make any reference to reduced monthly earning capacity. It only requires that the percentage of disability caused by a subsequent injury be determined by computing the percentage of the entire disability and deducting therefrom the percentage of the previous disability. Hence, nothing can be found within the language of subsection E which requires that the previous disability be one which reduced the employee's monthly earning capacity. Only a showing of a previous disability, as in the instant case the 'loss of an eye' is required and a deduction of that disability from the present disability.

"The Legislature plainly has concluded that from the loss of an eye or a hand or a foot, as the case might be, there is conclusively presumed a disability which it has required to be deducted from the percentage of the entire disability as it existed at the time of the subsequent injury, *probably because the previous loss is a disability which might or might not affect a person's ability to earn a living. It might or might not reduce his earning capacity. But it must be determined as a percentage of physical disability, which percentage must be deducted from the total physical disability for which the last employer is responsible.*

\*     \*     \*     \*     \*     \*

We cannot read the words 'earning capacity disability' into the statute when only a previous *physical* disability is referred to. (Emphasis added). 112 Ariz. at 255, 256, 540 P.2d at 1237.

In so holding, of course, the Supreme Court *sub silencio* destroyed the logical underpinning of the *Ronquillo* presumptions by removing the necessity to demonstrate any reduction in earning capacity at all.

In arriving at the foregoing interpretation of A.R.S. § 23–1044 E, the Arizona Supreme Court did distinguish its prior decision in *McKinney v. Industrial Commission, supra*, and expressly overruled *Goodyear Aircraft Corporation v. Industrial Commission, supra*. However, no mention was made of the *Ronquillo* and many other contra prior Supreme Court and Court of Appeals decisions, some of which we have previously cited in this opinion.

Immediately after the issuance of the Arizona Supreme Court's opinion in *Ross v. Industrial Commission, supra*, petitioner filed a timely request for review bringing the *Ross* opinion to the hearing officer's attention. In his decision upon review, the hearing officer stated:

"10. It is to be noted that in making the findings and determinations hereinafter set forth that the undersigned Hearing Officer is cognizant of and aware of the opinion of the Arizona Supreme Court in *Ross v. Industrial Commission*, 112 Ariz. 253, 540 P.2d 1234 (1975) (*Ross*); however, the rule in *Ross* is not applicable to the circumstances of the present case and is distinguishable therefrom."

Nothing further is contained within the hearing officer's decision upon review which would further enlighten this Court as to the reasons why the hearing officer considered that the principles stated in *Ross* would not be applicable to the facts here, thereby requiring the issuance of an unscheduled award.

An examination of the record discloses support for the hearing officer's scheduled award only if the *Ronquillo* line of decisions, rather than *Ross*, governs the inter-

pretation to be placed upon A.R.S. § 23–1044 E. On the other hand, the record clearly mandates the entry of an unscheduled award if the *Ross* interpretation governs, since there is no question but that at the time of the industrial injury, petitioner was suffering from permanent physical disability resulting from his service-connected injuries. The respondent carrier, recognizing that *Ross* is the latest decision interpreting A.R.S. § 23–1044 E, nevertheless urges that the Supreme Court did not even cite the *Ronquillo* lines of cases, and thereby could not possibly have intended to overrule them. Inasmuch as this Court's vacated opinion in *Ross* did cite *Ronquillo*, and *Ronquillo* was again brought to the Supreme Court's attention in the subsequently filed motion for rehearing after the issuance of its opinion, we cannot explain the Arizona Supreme Court's failure to cite *Ronquillo*, nor speculate on the reasons for such failure. However, we note that *Ross* did expressly overrule *Goodyear Aircraft Corporation v. Industrial Commission, supra*, a case relied upon in the *Ronquillo* decision. Without completely ignoring the reasoning in *Ross*, we have been unable to develop any rationale under which *Ross* and the *Ronquillo* line of decisions can be harmonized. Although not citing *Ronquillo*, the *Ross* reasoning constitutes a clear rejection of the *Ronquillo* interpretation that the words "previous disability" in § 23–1044 E refer to an earning capacity disability. If the Arizona Supreme Court desires to reconsider the interpretation set forth in *Ross*, or desires to limit *Ross* to its specific facts, then it is that court which must do so. Such action is not, nor should it be, within the prerogatives of this intermediate appellate court. *McKay v. Industrial Commission*, 103 Ariz. 191, 438 P.2d 757 (1968).

It is the opinion of this Court that based upon *Ross v. Industrial Commission, supra*, the award must be set aside.

FROEB, C. J., concurs.

JACOBSON, Presiding Judge, specially concurring:

I concur in the result reached by the majority of this court because I believe their interpretation of the holding in *Ross v. Industrial Commission*, 112 Ariz. 253, 540 P.2d 1234 (1975) that the "previous disability" referred to in A.R.S. § 23–1044(E) is a *physical* disability is mandated by that decision.

Moreover, the majority opinion adequately points out that this is a sharp turn in the law dealing with the scheduled-unscheduled dichotomy in workmen's compensation cases. What the majority does not point out, and hence this specially concurring opinion, is that the *Ross* decision has for all practical purposes repealed the legislature's statutory enactments dealing with scheduled injuries.

It is indeed the rare individual who has spent any time on this earth, that has not at some point suffered what could be classified as a "permanent physical disability". For example, simply among the judges on this court, approximately fifty percent wear glasses because of some kind of sight problem. These could obviously classify as "permanent physical disabilities". Also, most of us, at one time or another have had various surgical procedures, if nothing more than a tonsillectomy. Is the removal of an organ a "permanent physical disability"? Most of us have suffered the normal childhood diseases which have left us with enlarged hearts, partial loss of hearing, or the inability to compete in the Olympics, to say nothing of the various broken bones which did not heal correctly and straight. Are these also "permanent physical disabilities"? And, if so, might not old age, being overweight or being out of condition, which are permanent in nature, qualify as "physical disabilities" when compared to a Nureyev.

In short, there are none among us who could not arguably qualify as having some sort of permanent physical disability.

If the statutory enactments dealing with scheduled injuries are to be repealed, then that is a proper function for the legislature, not the judiciary.